(No. 32078.—

EDLA LAKE *et al.,* Appellants. *vs.* LILA M. SEIFFERT, Appellee.

*Opinion filed November 27, 1951.*

J. E. BAIRSTOW, and JOSEPH A. JADRICH, both of Waukegan, for appellants.

LIDSCHIN & PUCIN, of Waukegan, for appellee.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

Jacob Koski died October 21, 1949, leaving, as his only heirs-at-law, Edla Lake, his sister, Walfred Koski, his brother, and Irja Burke and Helmi Kivinen, his nieces. He executed his last will and testament on January 7, 1949, and it was admitted to probate in the county court of Lake

County following his death. The sole beneficiary and executrix of the will was Lila M. Seiffert, a niece of the testator's deceased wife. The heirs-at-law brought this suit in the circuit court of the county to contest the will on the grounds of undue influence, fraud and improper practice on the part of Lila M. Seiffert. At the conclusion of the contestants' evidence, the court granted the defendant's motion to exclude all the evidence from the consideration of the jury, and instructed the jury to return a verdict sustaining the will. The heirs have appealed and have come directly to this court, inasmuch as a freehold is involved.

The evidence introduced by appellants established that Jacob Koski had, during his life, owned an undivided one-half interest in a four-apartment brick building in Waukegan, as a tenant in common with Fred Maki, the father of appellee, Lila M. Seiffert. Mrs. Koski and Mrs. Maki were sisters. The Koski and Maki families each occupied one of the apartments in the building; the appellee and her son occupied one, while the fourth apartment was occupied by another sister of Mrs. Koski. After Mrs. Koski's death, in April, 1947, the testator continued to live in his apartment. It is apparent that the Koski and Maki families had lived in close association for many years.

Appellants all resided outside the State of Illinois but visits between them and the testator were exchanged frequently both before and after his wife's death, and there is every indication that the testator maintained a high esteem and friendly regard for his brother, sister and nieces up to the time of his death.

Appellants called appellee as an adverse witness under section 60 of the Civil Practice Act, (Ill. Rev. Stat. 1949, chap. 110, par. 184,) and by her testimony it was established that appellee and testator became frequent drinking companions after the death of his wife. On some occasions they would drink at the home, while on week ends they drank at various taverns, both together and in the

company of other couples. The witness stated that the testator usually drank three or four bottles of beer on such occasions, although he sometimes drank whiskey, and that he never became intoxicated at any time. From other portions of the record it appears that appellee and the testator had been drinking when they arrived at the home of his sister, Edla Lake, in Kenosha, Wisconsin, to spend Christmas Day of 1948; it does not appear, though, that either was in an intoxicated condition. During this period the testator was approximately sixty-three years old and was in good health, while appellee was in her early forties.

The record further discloses that appellee and the testator left their home together about ten o'clock the morning of January 27, 1949, and at three o'clock in the afternoon they visited the office of the testator's attorney, at which time and place the disputed will was drawn and executed. The scrivener testified that both the testator and appellee were in his office at the time the will was dictated, drawn and signed; that Koski told him he wanted the will in English because the scrivener could not understand Finnish, and that appellee and testator may have conversed in Finnish while they were in his office. He stated that he had known the testator for about ten years and that he had acted as his attorney at intervals during that period. He had never represented the appellee. The witness further testified that the testator referred to appellee as his niece and stated that he wanted her to be his chief beneficiary and executrix; that he did not mention any of his other relatives; that the witness knew that Mrs. Koski was dead at the time; and that the testator fully discussed the extent of his estate. He further testified that appellee said nothing at all and it was his opinion that the testator was of sound mind, coherent, sober and not under the influence of liquor.

The testimony which has been heretofore recited, constitutes, in substance, the entire proof offered by the contestants of the will, and served as the basis of the trial

court's order directing a verdict for appellee. The test which the court should apply to the proof before it upon motion for directed verdict is whether, when all of the evidence is considered, with all reasonable inferences drawn from it, in its aspects most favorable to the party against whom the motion is directed, there is a failure to prove one or more necessary elements of the case. (*Ennis* v. *Gale,* 407 Ill. 215; *Williams* v. *Consumers Co.* 352 Ill. 51; *Kinsey* v. *Zimmerman,* 329 Ill. 75.) Appellants here contend that the evidence raises a presumption of undue influence and presents matters bearing on the question of undue influence and fraud sufficient to have the issues submitted to the jury.

The undue influence which will void a will must be directly connected with the execution of the instrument and operate at the time it is made. It must be specifically directed toward procuring the will in favor of a particular party or parties, and it must be such as to destroy the freedom of the testator's will and render the instrument obviously more the offspring of the will of another or others, than his own. Whenever the evidence falls short of the legal requirements of establishing undue influence it is the duty of the trial court, upon motion, to exclude from the jury all evidence on the issue of undue influence. *Ennis* v. *Gale,* 407 Ill. 215; *Challiner* v. *Smith,* 396 Ill. 106.

It is appellants' theory that because the testator was not alone with his attorney, and did not have an unrestrained opportunity to communicate with him before or after the will was drawn, appellee's presence constituted a restraint or coercion which destroyed the freedom of the testator's action and interfered with the true expression of his will. In addition appellants call attention to certain decisions wherein various circumstances, coupled with active participation of the beneficiary in procuring the will, have been held to raise a presumption of undue influence because of the beneficiary's relationship to the testator or because

of the testator's physical and mental condition when the will was executed. Chief among the cases relied upon are *Donnan* v. *Donnan,* 256 Ill. 244, where the fact that the testator was old and enfeebled by disease was considered a circumstance which indicated the probable exercise of undue influence, and *Cheney* v. *Goldy,* 225 Ill. 394, where evidence of friendly relations between a testator and relatives not mentioned in his will was held competent as bearing on the issue of undue influence.

To repeat the rule again, briefly, the undue influence which will void a will must be directly connected with the execution of the instrument itself and must be operating when the will is made. (*Schlachter* v. *Schlacter,* 396 Ill. 184; *Ginsberg* v. *Ginsberg,* 361 Ill. 499.) The only evidence in this case which has the effect of bringing appellee's conduct within the rule is her presence in the attorney's office when the will was discussed, drawn and executed. Under similar facts in *Tidholm* v. *Tidholm,* 391 Ill. 19, it was held that the mere presence of a beneficiary did not constitute proof of undue influence, in the absence of any showing that she exerted any influence other than what her presence might produce, if any. Here appellee's presence is all that is proved. There is no showing that she caused or persuaded the testator to come to the attorney's office to make his will; that she ever discussed a will with the testator or his attorney, or that she directed or influenced the terms of the will. She maintained complete silence while the testator coherently discussed the extent of his estate, and expressed his will as to its disposition. We cannot say that appellee's conduct brings her within the rule of undue influence expressed above.

In the cases relied upon by appellants, the beneficiaries were shown to be active in procuring the contested wills or else occupied a fiduciary or confidential relationship which invoked the presumption of undue influence claimed to exist here. Presumption of undue influence arises not from the

fact of fiduciary relationship, or of the mental condition or habits of the testator, but from participation in procuring execution of the will. (*Powell* v. *Bechtel,* 340 Ill. 330.) Further, for the authorities relied upon to be applicable here they must be supported by the proof. There is no proof, or attempt to prove, that a fiduciary relation existed between the testator and appellee; there is no proof that the testator was old or enfeebled by disease so as to make him an easier victim of undue influence; nor does the evidence show that he was addicted to the use of intoxicating liquor or under its influence when the will was drawn and executed. The proof shows, rather, that the testator was in good health and managed his own affairs, and that he stated the terms of his will without persuasion or prompting at a time when he was sober, coherent and of a disposing mind. It is significant, too, that no attempt is made to attack his testamentary capacity. While there is evidence of a friendly relation between the testator and his relatives, such fact, standing alone, cannot be said to establish a presumption of undue influence. There is nothing unnatural in the fact that the testator left his property to a niece of his wife, with whom he had been on friendly terms for a long period of years. In *Harp* v. *Parr,* 168 Ill. 459, where a nephew of the testator's wife was the chief beneficiary of the will, it was stated that there is a presumption against undue influence where the beneficiary is one with whom the testator has maintained intimate and affectionate relations during his life.

Appellants also assert that appellee's failure to inform the scrivener that she was not the testator's niece, when she heard herself so described in the will as it was being dictated, suggests fraud on her part which should invalidate the will. Their theory is that her silence suppressed any discussion as to who the heirs of the testator were. We cannot impute such a purpose to appellee. Inasmuch as she and the testator had lived in the same household during

a greater portion of their lives, it is apparent that the testator knew her exact relationship to him. It is not uncommon for people to fail to distinguish between technical rules of affinity and consanguinity and refer to the children of brothers and sisters and to the children of brothers-in-law and sisters-in-law, simply as nieces and nephews. The relationship of the parties here makes it natural that the testator would use the term "niece" and that appellee would not protest it.

None of the facts in the record, taken with all reasonable intendment, and even considering their full cumulative effect, can be said to support the contention that the will was executed or procured through undue influence. Courts may not speculate as to what might have been the facts in the case, but the burden rests on the contestants to produce evidence of undue influence. (*Greenlees* v. *Allen,* 341 Ill. 262.) Appellants have not discharged this burden. Unaided by presumption, the circuit court of Lake County was justified in taking the issues from the jury, and its action in so doing is affirmed.

*Decree affirmed.*