(No. 34545.— )

ALICE J. CREAGER, Appellee, vs. FRANCIS E. WEIMER, Exr., et al., Appellants.

*Opinion filed March 20, 1958.*

EDGAR J. ELLIOTT, of Wheaton, for appellants.

JOHN P. BURITA, of St. Charles, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff, Alice J. Creager, instituted proceedings to contest the will of her deceased mother, Rose M. Flury, on the ground of lack of testamentary capacity, and the circuit court of Du Page County entered judgment on the jury verdict finding that the instrument was not the last will and testament of the testatrix. Inasmuch as a free-

hold is involved, a direct appeal has been taken to this court by the executor of the will, Francis E. Weimer. However, the other defendants who are beneficiaries under the will have not joined in the appeal.

The issue is essentially whether the trial court erred in denying defendants' motion for judgment notwithstanding the verdict, under the circumstances of this cause.

The issuance of a judgment notwithstanding the verdict in a will case is governed by the same rules as in other proceedings at law, and the only question is whether there is any evidence in the record tending to prove the essential elements of the complaint. (*Hunt* v. *Vermilion County Children's Home,* 381 Ill. 29, 32.) Plaintiff challenges the validity of the will on the ground that the testatrix lacked testamentary capacity, had insane delusions, and was under undue influence by her other daughter, the defendant Betty Flury Gould. Defendant, however, argues that the evidence established merely eccentricity on the part of the testatrix, and that since she was capable of conducting her business affairs, she had ample testamentary capacity.

The evidence and inferences therefrom are conflicting. Neither plaintiff nor defendant Anton Flury, husband of the testatrix were permitted to testify. It appears from the record, however, that testatrix owned property in excess of $30,000, and that on August 1, 1942, she executed an instrument purporting to be her will, prepared by counsel, who is also representing the executor herein, leaving one third to her husband, five dollars to her daughter, Alice, then age 19, and the rest of her property to her daughter, Betty, then age 14. At that time and prior thereto, the testatrix lived with her husband, Anton Flury, and her daughters, Alice and Betty, in a six-room house in West Chicago.

Although she owned in her own name property in excess of $30,000, including three pieces of improved prop-

erty and a vacant lot, she did housework outside the home at one dollar an hour on one day a week. For some years, she had the practice of attending and purchasing property at auction and rummage sales, practically daily, so that her home, including the attic, basement, and rooms reserved for living were filled and littered with old clothing, particularly little children's clothing, carloads of fruit jars, dishes, lamps, and piles of cartons filled with blankets. Even the bedrooms, including testatrix's bed, except the part she slept on, were filled with such objects. The bathroom also was crowded with various articles so that the clothes hamper had to be kept in the bathtub and taken out in order to bathe. Testatrix also stored her purchases and old discarded property of relatives on the back porch, in the yard, in the garage, and in an abandoned railroad depot which she bought from the Chicago and North Western Railroad Company.

Plaintiff also adduced testimony that testatrix was quarrelsome, had thrown a live cat at a neighbor boy; used profane and obscene language freely; and while she was kind to her daughter Betty, she frequently struck her older daughter Alice without provocation. Testatrix professed to the attorney who drew the will that she wished to leave only five dollars to Alice, because of her improper conduct with men; but the record reveals no factual basis for such a belief, not even from the testimony of Betty Flury Gould, who shared the room and bed with her sister at that time. Testatrix also told her attorney that she wanted to avoid leaving any property to her husband, because he was going out with other women, which fact is substantiated in some measure in the record by the testimony of defendant Betty Flury Gould. However, testatrix was apprised by counsel of her husband's statutory share.

In addition, plaintiff introduced in evidence two letters apparently written by the testatrix not long before the exe-

cution of the will, and addressed to her daughters. The letters were both written as farewell notes in contemplation of suicide, which she intended to commit either in front of a train or in the river. Both letters were filled with obscenity and references to sexual perversion of her husband and some woman. In one part of the letter testatrix tells Alice not to tell the neighbors about this, but in another part she states that the newspapers and broadcasting stations are being given copies of the letters, so that her husband can be humiliated. She claims in one letter that she cried for 21 days at a time; that she sees no use of living alone; that she sat and looked at the walls for seven days and nights while their father was out indulging in perverted sexual practices with this woman. She directs her daughters not to allow their father to occupy the home, although he was a joint tenant and would be sole owner on her death, and states that she has fixed it up so that he cannot spend any of her money, which she wants her girls to enjoy. Her statements that she always has and always will love her husband, and is relieving him of the burden of spending money on her, are mingled with obscene references to him, his mother, and a curse for his death by perverted sexual practices. She refers to her daughter Betty as a little worker, who always got a job, yet Betty was then only a school girl of 14, and Alice was the only one who had ever held a job.

The defendant executor offered the testimony of two employees of the bank where testatrix frequently deposited money, and they both stated that she carried on her business satisfactorily, without any assistance. The women for whom testatrix did housework in 1942 stated that testatrix was a good buyer; that the witness sometimes purchased things from her; that testatrix had a key to the witness' home, and would often cook meals; that while she was an unhappy, worried person, there was nothing wrong with

her mind; and that she was the same in 1942 and in the preceding years.

As hereinbefore noted, the jury found the issues for plaintiff. In support of the contention that judgment for defendant notwithstanding the verdict should be entered, the defendant executor cites the case of *Estes* v. *Clark,* 317 Ill. 585, where the court held that evidence of lack of proper care of the house, dress, miserliness, and offensive personal habits do not constitute an unsound mind, where the testator managed his property, paid his interest, and understood and appreciated his financial condition.

The evidence in the instant case, however, does not merely involve miserliness, or uncleanness, or eccentricity, as in the *Clark case.* The record shows that the testatrix was an extremely odd person, exhibiting not only a strange assortment of peculiarities and eccentricities, but a rank, unfounded obsession that her daughter deserved to be disinherited because she was immoral.

Although there was also substantial testimony offered by the executor that testatrix conducted her business affairs satisfactorily and understood her property, it was the province of the jury to resolve the conflict and determine whether testatrix had the requisite degree of soundness of mind to comprehend the nature and objects of her bounty, and the import of her acts in specifying the terms of her will. Since there is some evidence on which the jury's verdict for plaintiff could be predicated, the motion for judgment notwithstanding the verdict was properly denied, and the judgment of the circuit court must be affirmed.

*Judgment affirmed.*