Wilfred J. Malone, Plaintiff-Appellant, v. William Haynes Malone II and Peter Grimm Malone, Administrators With the Will Annexed, de bonis non, of the Estate of William H. Malone, Deceased, and Executors Under the Will of Hilda Malone, Deceased, Defendants-Appellees.

Gen. No. 47,711.

First District, Second Division.

June 7, 1960.

Rehearing denied June 27, 1960.

King, Robin, Gale, and Pillinger, of Chicago (Willard L. King and J. William Braithwaite, of counsel) for appellant.

Thomas C. Bradley, of Chicago (Warren L. Swanson, of counsel) for appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, Wilfred J. Malone, contests the validity of the will of his deceased father, William H. Malone.

The sole defendant was the widow, Hilda Malone, now deceased. The issues were lack of testamentary capacity of William Malone and undue influence by the widow. At the close of plaintiff's evidence, the court directed a verdict for defendant on both issues and dismissed the complaint for want of equity. Plaintiff appeals.

William H. Malone resided for many years in Park Ridge, Illinois. He was active in civic and political affairs. He was a member and chairman of the Illinois State Tax Commission for years and an unsuccessful candidate for governor of Illinois in 1932. He participated in the formation of the Citizens State Bank of Park Ridge, opened in 1929, was its president until 1933 and a director and chairman of the board of directors from January, 1949, to January, 1955. During this period he presided at directors' meetings, participated in determining bank policies, and was consulted on bank loans and investments. He decided who was to be hired or fired. In November, 1947, he settled income tax deficiencies and penalties, which had been litigated in the Tax Court of the United States in 1945 and 1946.

William H. Malone died August 14, 1956. His heirs were Hilda Malone, his wife of many years, and plaintiff, his son by a former marriage. The will was executed August 10, 1950, when he was about 73 years of age. The entire estate was left to Hilda Malone and, in the event of her predecease, to his three grandchildren, Peter G. Malone, William H. Malone II and Ethelee Carlson, children of plaintiff. The will was admitted to probate on October 23, 1956, and Hilda Malone qualified as executrix.

Hilda Malone died on July 7, 1959, during the pendency of this appeal. Peter G. Malone and William H. Malone II, as administrators de bonis non with the will annexed, of the estate of William H. Malone, and

as executors of the estate of Hilda Malone, were substituted as defendant appellees.

The question presented in this appeal is whether plaintiff adduced any evidence fairly tending to prove either lack of testamentary capacity or undue influence.

On the issue of lack of testamentary capacity, plaintiff's first witness was Oscar Harman, a lawyer, who testified at length. He had known Malone since 1927 and had represented him in a number of matters, including the income tax litigation. In 1948, 1949 and 1950, Malone made social calls at Harman's law office in Chicago two or three times a month, and repeatedly talked about ex-Governor Lowden's spending a lifetime persecuting him "to get even," because Malone "beat" him out of the presidency. Malone said that "Governor Lowden had planted his friends and stooges in the Bureau of Internal Revenue, and had instructed them to frame a tax case against him." On several occasions in 1949 and 1950, he accompanied Malone to the office of the state auditor on bank problems.

In August or September, 1950, Harman and a client saw Malone in his office at the Park Ridge bank and sought his opinion as to the value of a parcel of real estate in that vicinity, because Malone "had been in the oldest days about the smartest real estate operator on the northwest side. . . . He knew about land in the locality of this particular land." Malone persisted in discussing the Lowden persecution and, after about an hour, Malone finally said that "to give a value of real estate required some concentration and study and he couldn't do it any more." Malone was "not alert and informed in the sense that he knew what was going on as far as the events of the day were concerned."

Harman had known plaintiff since 1928. In 1949 and 1950, William Malone discussed Wilfred with Harman on occasions. In 1949 he assisted in getting a mar-

riage license for Wilfred's daughter, and William Malone thanked him. At that time Malone stated that he was very disturbed because he didn't know how to take sides between his son and his wife; that his son had been abandoned for about twenty years, and he hadn't known him as well as he should and he felt ashamed of that. Malone stated "he was disturbed and very sick about it. He just didn't know what to do."

Based upon his conversation with Malone in August or September, 1950, and his conversations immediately preceding that date, he was permitted, over objection, to give his opinion that Malone was "not of sound disposing mind and memory at that time."

The court refused to allow Harman to testify to daily conversations with Malone during a 1945 income tax trial, in which Malone wanted to prove that Lowden was responsible for the income tax prosecution by the federal government. The court also refused to admit the opinion of the tax court, which characterized Malone's story as "fantastic," and refused to permit Harman to testify that this decision was a blow to Malone's ego, which contributed to his unsoundness of mind in 1950. The court also refused to permit the witness to give testimony as to a 1933–1936 trip of William and Hilda Malone to Europe, a 1933 income tax evasion indictment, the trial and the Malone prison term, and to give an opinion that the trial, conviction, affirmance and prison sentence constituted a blow to his mentality that contributed to the condition, which the witness described, in August or September, 1950.

Dan Int-Hout, a Park Ridge business man, who had known Malone since 1921, was the next witness for plaintiff. He saw Malone on the street two or three times a week in the late 1940's and early 1950's. The subject of the conversations was Malone's experiences with the state tax equalization board, his difficulties

with the administration and some of the powers in the Republican party, and that he had been ill-treated and persecuted because of certain things that happened in his life. In response to a request for his opinion, based upon these conversations, as to whether Malone was of sound mind, he replied, "My opinion was that he was living under an obsession."

The third testamentary capacity witness was George A. Palmquist, who was cashier, vice president and executive vice president of the Citizens State Bank of Park Ridge from its formation in 1929 until 1955. He saw and talked with Malone very frequently and at least twice a week from 1939 to and including 1950. During that period Malone had been in various hospitals. Malone discussed Wilfred with him on many occasions and didn't speak too complimentary about him. From time to time Malone would say "that Wilfred just hadn't made the grade," and never did change his attitude toward Wilfred. When asked as to his opinion as to whether Malone was of sound mind and memory in August, 1950, Palmquist responded, "I would say he was on the decline at that time." This was excluded by the court.

The court rejected an affidavit of Dr. Portis, filed in the United States District Court, to the effect that Malone, in 1938, at the age of 61, had changes in his system which were consistent with an individual 10 or 12 years older. The purpose of the affidavit was to indicate that Malone's physical age was 83 to 85 at the time of the execution of the will. The court also rejected evidence to show that when the Circuit Court of Appeals affirmed his conviction in 1938, he had severe nose bleeding due to cardiac and circulation disturbances; that his heart and various portions of his digestive tract were in abnormal positions; that while in prison, he was transferred to a hospital; and that in 1943 and in 1952, he had prostate operations.

Plaintiff contends that the foregoing evidence, both admitted and rejected, established a prima facie case on the question of lack of testamentary capacity.

■■ We believe it unnecessary to discuss the rejected evidence. Some of it is cumulative, or has no probative value to show the condition of Malone's mind on the date the will was executed, which is the test. We find no error in the court's ruling, including the rejection of the tax evasion proceedings and the prison sentence.

■ A motion for directed verdict in a will contest is governed by the same rules which govern such motions in actions at law. The contestants are entitled to the benefit of all the evidence considered in its aspects most favorable to them, together with all reasonable inferences to be drawn therefrom, and the only question on review is whether there is any evidence tending to prove the allegations in the complaint. If no evidence is introduced tending to prove the allegations of the complaint, or if but a bare scintilla of evidence has been adduced, the court should grant a motion for a directed verdict. Peters v. Catt, 15 Ill.2d 255, 260 (1958), 154 N.E.2d 280; Quellmalz v. First National Bank of Belleville, 16 Ill.2d 546 (1959), 158 N.E.2d 591.

■ In order to have testamentary capacity, a testator is required to have sufficient mental ability to know and remember who are the natural objects of his bounty, to comprehend the kind and character of his property, and to make disposition of that property according to some plan formed in his mind. Eccentricity does not constitute unsoundness of mind. Neither old age, peculiarities, feebleness, nor miserly habits, of themselves, show a lack of testamentary capacity. (Quellmalz v. First National Bank of Belleville, 16 Ill. 2d 546, 553, 554, 158 N.E.2d 591.) It has been repeatedly held that one who is capable of transacting ordi-

299

nary business affairs is capable of making a valid will. Quathamer v. Schoon, 370 Ill. 606, 611 (1939), 19 N.E.2d 750; Sterling v. Dubin, 6 Ill.2d 64, 74 (1955), 126 N.E.2d 718.

■■ While a nonexpert may give his opinion as to the mental condition of the testator for a reasonable time before or after making the will, he must first testify to sufficient incidents, facts and circumstances to indicate his opinion is not a guess, suspicion or speculation. Until he has related facts and circumstances which afford a reasonable ground for determining the soundness or unsoundness of the testator's mind, his opinion is of no value and should not be admitted in evidence. Peters v. Catt, 15 Ill.2d 255, 260, 154 N.E.2d 280.

Applying the foregoing principles, we believe an examination of the testimony of plaintiff's witnesses fails to disclose any evidence to reasonably induce a belief that the testator did not have sufficient mental capacity to make a valid will. Only Harman testified that Malone was of unsound mind and memory. He predicates this opinion on the Lowden persecution conversations and the refusal of Malone to give a real estate appraisal.

■■ Plaintiff argues that the testimony of this one witness made a prima facie case, sufficient in itself to warrant the trial judge submitting the cause of mental incapacity to the jury. (Heideman v. Kelsey, 414 Ill. 453, 457 (1953), 111 N.E.2d 538.) Also, that once the opinion of a witness on testamentary capacity has been admitted, the court cannot weigh the facts upon which it was based in sustaining a motion for a directed verdict. (Hunt v. Vermilion County Children's Home, 381 Ill. 29, 34 (1942), 44 N.E.2d 609.) We agree, if the witness has stated sufficient facts on which to base the opinion expressed. Until a witness has related facts and circumstances

which could induce a reasonable belief that the testator was not mentally capable of making a will, his opinion, even though admitted, has no probative force, when tested by motion to direct a verdict. (Quathamer v. Schoon, 370 Ill. 606, 612, 19 N.E.2d 750; Knudson v. Knudson, 382 Ill. 492, 499 (1943), 46 N.E.2d 1011; Logsdon v. Logsdon, 412 Ill. 19, 23 (1952), 104 N.E.2d 622; Peters v. Catt, 15 Ill.2d 255, 260, 154 N.E. 2d 280.) We believe this applies to the opinion of Harman.

 Under the most favorable view for plaintiff, although the Lowden persecution belief might have amounted to an insane delusion, the rule is that an insane delusion does not exist unless the fallacy of such belief can be demonstrated, and that the insane delusion affected or entered into the execution of the will. (Quellmalz v. First National Bank of Belleville, 16 Ill.2d 546, 555, 158 N.E.2d 591.) There is no proof that Malone's belief about the Lowden persecution was false or, if it was an insane delusion, that it affected or entered into the execution of the Malone will.

 The failing memory excuse, given by Malone as a reason for his refusal to give a real estate appraisal, is of little value to induce an opinion that Malone did not have sufficient mental capacity to make a valid will. About that time, Malone discussed his son with Harman and went into detail as to how he felt toward him. Harman accompanied Malone to the state auditor's office on several occasions and related nothing to show that Malone was not transacting his ordinary business intelligently. A defective memory and mental sluggishness do not render a testator incapable of making a will, unless his mind has become so impaired that he is incapable of understanding the business of making a will while he is engaged in the act. Forberg v. Maurer, 336 Ill. 192, 201 (1929), 168 N. E. 308.

There is no evidence in the record which could induce a reasonable belief that Malone did not know fully what property he owned or that he was not fully aware of his relations to those who might be presumed to have some claim upon his consideration in the disposition of his estate.

The rule is laid down in Greenlees v. Allen, 341 Ill. 262, 264 (1930), 173 N. E. 121, that if the chancellor who heard the testimony is convinced that a verdict for the contestants must necessarily be set aside because the evidence, with all its reasonable inferences and intendments, taken in the aspect most favorable to contestants, does not support the cause of action, it becomes the duty of the court to withdraw the issue from the jury and enter a finding.

 We are not convinced that this record contains evidence justifying the submission of the issue of testamentary capacity to the jury. We cannot say the trial court should not have directed a verdict for defendant on the question of testamentary capacity.

Upon the issue of undue influence, the direct evidence of the preparation and execution of the Malone will shows it was prepared by Herbert R. Stoffels, the attorney for the bank, who had represented Mrs. Malone in 1938 and 1939. Mrs. Malone was present when the will was executed. The witnesses were two bank employees—Evelyn Johnson and Frank O. Potter, its then president.

Neither Stoffels, Potter nor Evelyn Johnson testified. Mrs. Malone testified as an adverse witness. Her examination was limited to Citizens State Bank stock transfers, its ownership and final sale. Plaintiff states it would have been futile to question her about the circumstances attending the execution of the will, because "her lack of candor about her acquisition of the stock raises definite suspicions of what occurred when the will was signed."

The evidence relied upon to establish that Mrs. Malone was the dominant party and her husband the dependent one is that they were joint lessees of a safety deposit box, and that from 1948 to 1955 she held a majority of the stock in the Citizens State Bank of Park Ridge, of which she was an active director.

There is evidence of a stock transfer pattern which developed when Malone's income tax problems arose, whereby the controlling shares of stock were not held in either the name of William H. Malone or of his wife, Hilda, from 1933 until after Malone had settled his income tax difficulties in 1947. Mrs. Malone acquired 10 shares in May, 1944, and 280 shares in September, 1948. In January, 1949, she transferred the 10 shares to Mr. Malone. The stockholdings of Mr. and Mrs. Malone then remained unchanged until 1955, when the shares were sold at $2,400 a share. Mrs. Malone stated she had negotiated the sale, and Mr. Malone was present when the transfer was made.

The undue influence which invalidates a will must be directly connected with the making of the will, by its preparation or by participation in its preparation and execution. (Mitchell v. Van Scoyk, 1 Ill.2d 160, 173 (1953), 115 N.E.2d 226.) It must be specifically directed toward procuring the will in favor of a particular party or parties and must be such as to prevent the testator from exercising his own will in the disposition of his estate. Where a fiduciary relationship exists between the testator and a devisee who receives a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party, and the testator reposes trust and confidence in the devisee, and where the will is written, or its preparation procured by that beneficiary, proof of these facts establishes prima facie the charge that the execution of the will was the result of undue

303

influence exercised by that beneficiary. Peters v. Catt, 15 Ill.2d 255, 263, 154 N.E.2d 280.

Plaintiff relies primarily on Mitchell v. Van Scoyk, 1 Ill.2d 160, 115 N.E.2d 226, and Tidholm v. Tidholm, 391 Ill. 19 (1945), 62 N.E.2d 473. Both of these cases contain direct evidence, not inferences, that a principal beneficiary was directly connected with the making of the will by its preparation or by participating in its preparation and execution. In the Mitchell case, the evidence shows that one of the beneficiaries was present at all times during the discussion as to what the will should contain, and participated in the discussion to some extent. Also, she secured the witnesses by prearrangement. In the Tidholm case, the beneficiary, a daughter, made the appointment and appeared in the office of the attorney, where she told him that her father wanted to make a will. She was present during part of the discussion about the will and wrote the names of the legatees at the request of the testator. She urged an early completion of the will and was present at its execution.

We have examined Cheney v. Goldy, 225 Ill. 394, 400 (1907), 80 N. E. 289, cited by plaintiff to sustain his contention that proof of undue influence may be wholly circumstantial and inferential. There the mother of the beneficiaries of the will took a direct and active part in completing its execution and in the securing of the witnesses.

In Lake v. Seiffert, 410 Ill. 444 (1951), 102 N.E.2d 294, the beneficiary was present in the attorney's office when the will was discussed, drawn and executed. On page 449, the court said this evidence was not enough, because there was no showing that the beneficiary caused or persuaded the testator to go to the attorney's office to make his will; or that she ever discussed the will with the testator or his attorney;

or that she directed or influenced the terms of the will, even though she was present when it was discussed.

If we accept the contention that Mrs. Malone was the dominant party, there is no evidence in this record to show, or to reasonably infer, in a light favorable to plaintiff, that she directed or influenced the terms of the will, even though it was drawn by the attorney for the bank, in which she held controlling interest. There is no showing that Mrs. Malone ever discussed the will with the testator or the attorney who prepared it; or that she was present during such a discussion; or that she arranged for the witnesses. The wrongful influence must be operative at the time the will is made. Mere opportunity is not enough to show the exercise of undue influence. (Logsdon v. Logsdon, 412 Ill. 19, 26, 104 N.E.2d 622.) The presence of the principal beneficiary does not constitute proof of undue influence, in the absence of any showing that she exerted any influence other than what her presence might produce. Lake v. Seiffert, 410 Ill. 444, 449, 102 N.E.2d 294.

On the issue of undue influence, considering only the testimony most favorable to plaintiff, together with all of the legitimate inferences and presumptions to be drawn therefrom in his favor, we have concluded there is no evidence fairly tending to establish the charge that Mrs. Malone was directly connected with the making of the will, by its preparation, or participated in its preparation and execution. This is a requirement on the issue of undue influence. Redmond v. Steele, 5 Ill.2d 602, 611, 614 (1955), 126 N.E.2d 619.

Courts may not speculate or guess as to what might have been the facts in the case, but the burden rests on the contestant to produce evidence of undue influence. Whenever the evidence falls short of

the legal requirements of establishing undue influence, it is the duty of the trial court, upon motion, to exclude from the jury all evidence on the issue of undue influence. (Lake v. Seiffert, 410 Ill. 444, 448, 451, 102 N.E.2d 294.) We believe the court was correct in directing a verdict for defendant on this issue.

We conclude that plaintiff failed to adduce evidence sufficient to submit to a jury either of the issues in this case. Therefore, the decree is affirmed.

Affirmed.

KILEY and BURMAN, JJ., concur.