*In re* ESTATE OF LEOLA C. LEMKE, Deceased (Claude Little *et al.*, Petitioners-Appellants, v. Lola Mae Behnke, Indiv. and as Ex'r of the purported Last Will and Testament of Leola C. Lemke, Deceased, *et al.*, Respondents-Appellees).

Fifth District No. 5—89—0167

Opinion filed September 26, 1990.

Stephen M. Osborne, of Hohlt, House, DeMoss & Johnson, of Nashville, for appellants.

David R. Smith, of Nehrt, Sachtleben, Fisher & Smith, of Chester, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Leola Lemke died October 24, 1987. Claude and Joan Little filed a petition seeking: (I) to set aside decedent's purported last will and testament dated October 23, 1987; and (II) to set aside a quitclaim deed from the decedent to Lola Behnke, dated October 22, 1987. Petitioners alleged that Lola Behnke exerted undue influence upon Leola Lemke which resulted in the preparation and execution of the will and deed.

After the jury was impanelled, but prior to any witness testifying, the court granted Lola Behnke's motion to sever the trial of count I from the trial of count II. The trial on count I was conducted, and the jury was discharged after failing to reach a verdict. The court then entered a judgment order granting respondents' post-trial motion, entering judgment in favor of the respondents and against the petitioners with respect to count I of the petition. The court denied petitioners' post-trial motion which sought to have the judgment set aside and a new trial ordered. The court also granted respondents' motion to dismiss count II of petitioners' complaint. Petitioners appeal.

The first matter for our consideration is petitioners' claim that the trial court erred in granting respondents' motion for severance.

■ The trial judge is given broad discretion to consolidate and sever claims. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1006.) The judge's discretion is to be exercised in each case by an appraisal of administrative convenience and the possibility of prejudice to substantial rights of the litigants in the light of the particular problems which will arise in the course of the trial. (*Mount v. Dusing* (1953), 414 Ill. 361, 367, 111 N.E.2d 502, 505.) A court of review will not reverse the trial court's determination unless such discretion has been manifestly abused. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 356, 366 N.E.2d 327, 335.) We find no abuse of discretion in this case.

Several factors were raised by the respondents before the trial court in support of their motion for severance. Respondents pointed out that a proceeding to set aside a conveyance based upon an alleged abuse of a fiduciary relationship is an equitable issue which does not afford petitioners the right to a jury trial. In such a proceeding, any jury verdict would be advisory to the court. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1111.) However, a proceeding to invalidate a will is to be tried by a jury if a party so demands. (Ill. Rev. Stat. 1989, ch. 110½, par. 8—1.) Respondents contended that consolidation of both counts

into one trial would place an undue burden on the jury and the court because: (1) petitioners lacked standing to set aside the deed; (2) the Dead Man's Act (Ill. Rev. Stat. 1989, ch. 110, par. 8—201) had no application to count II because the sole defendant in that case was Lola Behnke; and (3) the burden of proof in a proceeding to set aside a conveyance is greater than that required to invalidate a will.

■■ Under the circumstances of this case, these factors could have raised legitimate concerns which the trial court may have considered in making its determination to sever the issues. We also believe that there was no prejudice to any substantial right of the petitioners because of the court's decision. Evidence was admitted as to the preparation and execution of both the will and the deed. Evidence was also admitted regarding Lemke's removal of the Littles' names from her bank accounts and certificates of deposit, and placing Behnke's name on the same. While petitioners contend that the repetition of evidence to be presented in the trial of both counts is burdensome, petitioners do not claim that any evidence applicable to count II was rejected by the court during the trial of count I. Furthermore, petitioners' argument that severance of the issues results in a multiplicity of suits and administrative inefficiency is not convincing in light of the facts of this case. Assuming the trial court's judgment in favor of the respondents is affirmed, and the dismissal of count II is affirmed, petitioners' predicted "multiplicity of suits" is a nullity. By severance of the issues under this scenario, the trial court effectively avoided unnecessary litigation as to count II. In light of the foregoing, we find that the trial court did not abuse its discretion in severing for trial counts I and II of the complaint.

We now turn to the question of whether the trial court erred in directing a verdict on count I in favor of the respondents. Petitioners assert that the evidence presented is sufficient to give rise to a presumption that Lola Behnke exerted undue influence over the decedent; that Lola Behnke caused the preparation of the last will and testament; and that Lola Behnke received a substantial benefit under the terms of the last will and testament.

An examination of the record shows that Lola Behnke was the decedent's first cousin. The Littles were neighbors and friends of Leola Lemke but were not related to her. Leola was hospitalized twice in 1987. Her first hospitalization was in September, and in October of 1987 she entered the hospital again and remained there until her death. Claude Little testified that he visited Leola during her first hospital stay and that his wife visited Leola during her second hospital stay. Lola Behnke testified that she visited the decedent everyday

during her hospitalization.

Following her hospitalization of September 25, 1987, through September 30, 1987, Lola Behnke picked Leola up from the hospital. Behnke testified that before taking Leola Lemke home, Lemke requested that Behnke take her to the bank. At the bank Lemke had the Littles' names removed from her checking account and had Lola Behnke's name put on the account. Lemke also had a certificate of deposit transferred to a payable-on-death account, naming Behnke as beneficiary. The Littles' names were also removed from a seven-day certificate of deposit, and Behnke's name was put on the same. Lola Behnke testified that Leola Lemke had Behnke's name put on Lemke's safety deposit box in October of 1986.

Upon leaving the bank, Behnke took Lemke to Behnke's home, where she stayed for four or five days. Soon after Lemke arrived at Behnke's home, Lemke was feeling poorly and vomited. Behnke testified that Lemke had difficulty keeping food down after her release from the hospital, and this condition grew progressively worse. While Lemke was a guest at Behnke's home, Behnke prepared Lemke's meals for her and saw to it that Lemke took her medication. Five days after her discharge from the hospital, Lemke asked to be taken to her own home. Lola Behnke drove Leola Lemke home, but continued to visit her everyday and prepare meals for her. Behnke testified that Lemke was on a special diet when she came home from the hospital and was concerned that she was not going to be able to cook her proper meals without assistance. "She wanted me to see that she had the right food to eat."

On October 15, 1987, Lola Behnke, at the request of Leola Lemke, removed Lemke's will, which was sealed in an envelope, from Leola's safety deposit box. Behnke then made an appointment with attorney William Norton because Lemke wanted to revise her old will. Behnke testified that she telephoned Norton's office because he was the nearest attorney that she knew. Behnke's children attended school with Norton, but she did not know him personally and had never had any business with Norton. Lola Behnke testified that on October 16, 1987, she drove Lemke to Norton's office, and at Leola's insistence she was present during the office consultation. The old will taken from the safety deposit box was still sealed in an envelope, and it was not removed until Norton took the envelope and broke the seal. Behnke testified that Leola had the Littles deleted from her will, and the devise of a 40-acre tract to the Littles in the old will was deleted because it had already been sold to the Littles. During this meeting with Norton, Lemke also directed Norton to prepare a quitclaim deed

granting 72 acres to Behnke. Behnke testified that the purpose of the deed was to give Behnke the right to sell the realty if Lemke needed the money for nursing home care. Behnke denied that the preparation of the deed was Behnke's idea.

Attorney William Norton confirmed that at the October 16 consultation he removed Leola's old will from a sealed envelope. At the office meeting Lemke first instructed him to add the name of her cousin Wendell Aitken, who was omitted in the first will. Norton testified that Lemke was very specific that she did not want to make any provision for the Littles although they were included in her prior will. Norton testified that upon further inquiry, Lemke told him that she preferred to leave her estate to her family and that the Littles were not related to her. Behnke was named as the executrix in the new will, and a devise of 25 acres to Behnke which was included in the first will was not deleted from the second will. Norton further testified that Lemke advised him that she wanted her 72-acre tract of realty conveyed directly to Behnke. After advising Lemke of the ramifications of a direct conveyance, it was determined that a quitclaim deed reserving a life estate to Lemke would be prepared. Norton then brought up the topic of having a power of attorney prepared. After advising Lemke of the advantages and disadvantages of a power of attorney, and what powers such a document confers, Lemke instructed Norton to prepare the document, naming Behnke as attorney-in-fact.

Norton explained that during the office conference there were approximately five instances when he asked Leola Lemke a question and she turned to look at Lola Behnke. Norton recalled that Lemke never verbally asked Behnke any questions, but would look to her. Behnke would shrug her shoulders, and the only verbal conversation between the two was Behnke telling her, "[I]t's your property. It's your decision. You make it." Norton did not recall Behnke otherwise interrupting or interjecting any comments during the meeting.

A few days later Norton received a message that Leola Lemke was in the hospital. He had the will, deed and power of attorney prepared and personally went to the hospital to have Lemke execute the documents. Norton went to the hospital without first calling Behnke or Lemke to advise them that he was coming. Upon his arrival, Lola Behnke was visiting Lemke and remained in the room while Norton had Lemke execute the deed and the power of attorney. Lemke did not execute the will at that time as she noted an error in the document that necessitated the will being retyped. Norton testified that the final draft of Lemke's will was executed October 23, 1987, at her

hospital room, in the presence of his secretaries, since he was unable to go there himself. It is not shown by the evidence whether Behnke was present when the will was executed.

■ Appellants contend that the evidence raises a presumption that Behnke exerted undue influence over Lemke in the procurement of her last will and testament. The undue influence which will void a will must be directly connected with the execution of the instrument and operate at the time it is made. It must be specifically directed toward procuring the will in favor of a particular party or parties, and it must be such as to destroy the freedom of the testator's will and render the instrument more the offspring of the will of another than of his own. (*Ennis v. Gale* (1950), 407 Ill. 215, 218, 95 N.E.2d 322, 323-24; *Lake v. Seiffert* (1951), 410 Ill. 444, 448, 102 N.E.2d 294, 296.) Appellants maintain that Behnke had the opportunity to exercise undue influence over Lemke by virtue of Lemke's old age and weakened condition. They argue that Lemke reposed trust and confidence in Behnke, and could easily have been influenced by Behnke, who in the last months of Behnke's life prepared her meals, assisted her with her medication and everyday needs, and visited Lemke nearly everyday. Appellants cite as direct evidence of undue influence the fact that a fiduciary relationship was created between Lemke and Behnke. Specific reference is made to the power of attorney and the addition of Behnke's name to Lemke's bank accounts.

■ ■ The fact that a fiduciary relation exists between the testator and the beneficiaries of her will is not sufficient, standing alone, to establish the charge of undue influence. (*Ginsberg v. Ginsberg* (1935), 361 Ill. 499, 509, 198 N.E. 432, 436.) Undue influence sufficient to void a will must be directly connected with the execution of the instrument itself and must be operating when the will is made. (*Lake*, 410 Ill. at 449, 102 N.E.2d at 296.) Mere opportunity is not enough to show the exercise of wrongful influence. (*Logsdon v. Logsdon* (1952), 412 Ill. 19, 26, 104 N.E.2d 622, 625.) There is no evidence that Behnke used the power of attorney to her own advantage or that the funds in the jointly held bank accounts were used to Behnke's advantage. The only evidence of Behnke's involvement in the making of the will was Behnke's retrieving the old will from the safety deposit box, making the appointment to see attorney Norton, driving Lemke there, and being present when the will was discussed with the attorney. There is no evidence that Behnke suggested or persuaded Lemke to revise her will.

We find it significant that although the evidence shows that Lemke was in poor health and required some assistance in her every-

day needs, there is no evidence attacking her testamentary capacity. (See *Lake*, 410 Ill. at 450, 102 N.E.2d at 297.) There is evidence that during the consultation with Norton, Lemke looked to Behnke on occasion; however, at no time did Behnke offer advice or comment. It was Lemke who stated her desires to Norton with regard to a revised will, a deed, and the power of attorney. The facts that Behnke's name was added to Lemke's bank accounts, that Behnke was named as attorney-in-fact under the power of attorney, and that Behnke visited with Lemke almost daily and assisted Lemke in her personal affairs were not sufficient proof of undue influence to allow the issue to go to the jury under the circumstances of this case.

 █ Likewise, we do not find that Behnke received a substantial benefit under the will evidencing undue influence over the testator. Insofar as Behnke is concerned the only differences between the earlier will of October 5, 1983, and the contested will are that Behnke was named executrix and she received a bequest of a china cabinet in the latter will. This alone is not enough to raise a legal presumption of undue influence. The person charged with exercising undue influence must receive a substantial benefit as a legatee or beneficiary. (*Breault v. Feigenholtz* (1973), 54 Ill. 2d 173, 182, 296 N.E.2d 3, 9; *Brown v. Commercial National Bank* (1969), 42 Ill. 2d 365, 369, 247 N.E.2d 894, 897.) It is clear that no substantial benefit was conferred upon Behnke as a result of this devise.

Notwithstanding these findings, the Littles claim that Behnke received a substantial benefit upon execution of the October 23, 1987, will because a previous devise of 112 acres to the petitioners was omitted from the will. The Littles fail to recognize that of the 112 acres referred to in the October 5, 1983, will, 40 acres were conveyed to them in the interim between the two wills, thereby leaving 72 acres in October 1987. The 72-acre tract was conveyed to Lola Behnke on October 22, 1987, via a quitclaim deed reserving a life estate to Leola Lemke. The devise of the 112 acres to the Littles in the October 5, 1983, will was already adeemed by the time Leola Lemke executed her October 23, 1987, will. Under these circumstances we cannot find that Lola Behnke substantially profited as a beneficiary or legatee under Leola Lemke's last will and testament.

 The test which the court should apply to the proof before it upon a motion for directed verdict is whether, when all of the evidence is considered with all reasonable inferences drawn from it in its aspects most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37

Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; *Ennis v. Gale*, 407 Ill. at 216, 95 N.E.2d at 323.) There is nothing in the record to support the claim that the will was procured or executed as a result of undue influence, that Behnke caused the preparation of the will, or that Behnke received a substantial benefit under the terms of the will.

In view of the foregoing, the trial court properly directed a verdict against the Littles on their petition to set aside the October 23, 1987, will. After this ruling the Littles lacked standing to pursue their petition to set aside the quitclaim deed of the 72 acres since their only interest in said land was that which had been created by the October 5, 1983, will. (See *Yott v. Yott* (1914), 265 Ill. 364, 106 N.E. 959.) Therefore, the trial court properly dismissed count II, which had sought to set aside the quitclaim deed to Behnke. The judgment of the trial court is affirmed.

Affirmed.

RARICK and GOLDENHERSH, JJ., concur.