(No. 34868.—

JOHN PETERS *et al.,* Appellants, *vs.* JAMES CATT *et al.,* Appellees.

*Opinion filed November 26, 1958.*

ARMBRUSTER & DIAZ, of Alton, for appellants.

G. R. SCHWARZ, of Jerseyville, for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The circuit court of Jersey County directed a verdict at the close of plaintiffs' case in a will contest and entered judgment that the instrument offered in evidence is the last will and testament of John Catt, deceased. A freehold being involved, plaintiffs appealed directly to this court.

The deceased, 82 years of age, died on October 16, 1956, leaving as his heirs-at-law, two brothers, James Catt and Frank Catt, a sister, Harriet Windsor, and eleven nephews and nieces, grandnephews and grandnieces, all being either children or grandchildren of Mamie Peters, a deceased half sister. John Catt executed the instrument purporting to be his will on March 18, 1956, and it was admitted to probate on November 17, 1956. It left his entire estate, inventoried at about $82,000, to his brothers and his sister, equally, and named his brothers as executors. Thereafter, ten of the other heirs brought this suit to contest the will, joining the beneficiaries, executors and the one remaining heir, as defendants. The complaint alleged the lack of testamentary capacity of John Catt, and the exercise of fraudulent practices by James and Frank Catt and that, in executing the will, John Catt was under improper restraint and undue influence of James and Frank Catt.

The evidence established that John Catt lived with his brother Henry, who is likewise now deceased, until May, 1955, when he entered the Pauline Stark Nursing Home. He was then over 80, and had suffered a stroke, which left him unable to write, and he was also suffering from arteriosclerotic changes. Sometime after March 12, 1956, James Catt called Judge John Self, and asked him to prepare a will for John Catt just like that of his brother Henry. Judge Self, without consultation with John Catt, obtained a copy of Henry's will, and drafted the purported will. On the following Sunday, Judge Self asked Rodney Jacoby to be a witness to the will and took him to the nursing home. Upon arrival at the nursing home, Judge Self handed the will to James Catt, who read part of it aloud, and Judge Self read the remainder. Both James and Frank Catt were then present. When asked if the will was the way he wanted it, John Catt nodded his head affirmatively. He was then supported in his bed by Judge Self and Jacoby as he made a mark on the will, and they witnessed the mark and the execution of the will.

After John Catt went to the nursing home, James signed checks for him, both James and Frank Catt entered his safe deposit box, and Frank's daughter, Edith Catt, made out checks for him, took bank statements to him at the nursing home and went over his affairs with him.

On the issue of lack of testamentary capacity, plaintiffs produced three lay witnesses. The first, Nancy Peters, the mother of seven of the plaintiffs, testified that while she had known John Catt all her life, she had not seen him for two or three years; that she visited him at the nursing home on March 14 or 15, 1956; that he was in bed and knew her, but "he never acted like he knew me;" and that she kept talking to him yet he didn't speak or answer her. She then testified, without objection, that she was of the opinion that on March 14 or 15, 1956, John Catt "didn't have no sound mind at that time."

Nettie Henrion then testified that she visited John Catt with her sister, Nancy Peters, on March 14 or 15, 1956; that he was in bed and did not know her; and that she talked to him but he didn't speak to them or say anything. This witness had not seen him for four or five years, and she could not say that he ever called her by name, even though she had lived across the field from him a number of years. In response to a question concerning her opinion as to the condition of the mind of John Catt on March 14 or 15, 1956, she stated: "No, I don't think he had any sound mind or memory. I don't think he knew anything."

Ernest Palmer testified that he had known John Catt since about 1905; that in late years John did not carry on a normal conversation; that his memory did not seem to be very good; and that he kept repeating himself. This witness had not seen him since he went to the nursing home in 1955. However, he was permitted to testify, without objection, that he had an opinion concerning whether John Catt was of sound mind and memory and he stated: "I don't think he was of what you would call right sound mind." Plaintiffs contend that this evidence established a *prima facie* case on the question of lack of testamentary capacity. Defendants deny such assertion.

The legal principles under which this case must be decided are well settled. A motion for directed verdict in a will contest action on the ground that there is no evidence in the record tending to prove the allegations of the complaint is governed by the same rules which apply to actions at law, and if there is no such evidence, the motion should be allowed. (*Metzger* v. *Mowe,* 8 Ill.2d 274; *Shevlin* v. *Jackson,* 5 Ill.2d 43; *Johnson* v. *Bennett,* 395 Ill. 389.) The contestants are entitled to the benefit of all the evidence considered in its aspects most favorable to them, together with all reasonable inferences to be drawn therefrom, and the only question on review is whether there is any evidence tending to prove the allegations in the complaint. (*Mitchell*

v. *Van Scoyk*, 1 Ill.2d 160; *Johnson* v. *Bennett*, 395 Ill. 389; *Tidholm* v. *Tidholm*, 391 Ill. 19.) Neither the trial court, nor this court may weigh the evidence on a motion for directed verdict. (*Mitchell* v. *Van Scoyk*, 1 Ill.2d 160.) But if no evidence is introduced tending to prove the allegations of the complaint, or if but a bare scintilla of evidence has been adduced, the court should grant a motion for a directed verdict. *Johnson* v. *Bennett*, 395 Ill. 389; *Ginsberg* v. *Ginsberg*, 361 Ill. 499.

With these principles in mind, we have first examined the record with reference to the allegation of lack of testamentary capacity. The law requires that a testator, when making a will, must have sufficient mental capacity to know the natural objects of his bounty, to comprehend the kind and character of his property, to understand the particular business in which he is engaged, and to make disposition of his property according to some plan formed in his mind. However, he does not have to be absolutely of sound mind in every respect in order to have sufficient mental capacity to make a will. (*Butler* v. *O'Brien*, 8 Ill.2d 203; *Lewis* v. *Deamude*, 376 Ill. 219; *Quathamer* v. *Schoon*, 370 Ill. 606; *Miles* v. *Long*, 342 Ill. 589.) While a nonexpert can give his opinion as to the mental condition of the testator for a reasonable time before or after making the will, he must first testify to sufficient incidents, facts and circumstances to indicate his opinion is not a guess, suspicion or speculation. Until he has related facts and circumstances which afford a reasonable ground for determining the soundness or unsoundness of the testator's mind, his opinion is of no value and should not be admitted in evidence. *Butler* v. *O'Brien*, 8 Ill.2d 203; *Lewis* v. *Deamude*, 376 Ill. 219; *Ginsberg* v. *Ginsberg*, 361 Ill. 499; *Brainard* v. *Brainard*, 259 Ill. 613.

By the foregoing standard, the testimony of Nettie Henrion and Ernest Palmer is without foundation. The sole basis of Nettie Henrion's opinion is that John Catt did

not know her and would not carry on a conversation with her. However, she had not seen him for several years and could not say that he had ever known her by name. Ernest Palmer based his opinion on the fact that prior to entering the nursing home, John Catt did not remember things and repeated himself in conversations. Nancy Peters, the mother of seven of the plaintiffs, was well acquainted with John Catt, but had not seen him for two or three years. She testified that she visited him on March 14 or 15, 1956, shook his hand and talked to him for 20 to 30 minutes, "but he didn't actually answer." Her testimony as to whether or not he knew her is confusing, and neither the abstract, nor defendants' additional abstract fairly presents it. From the original record, it appears that she testified twice on direct examination that "he knew me;" once that "he never acted like he knew me," and finally, "Well, the day I went there, he didn't know nobody." Upon this preliminary testimony, she stated that in her opinion, "he didn't have no sound mind at that time." We think it is clear that these witnesses did not testify to sufficient facts and circumstances to make their opinions of any value in determining the ultimate issue of testamentary capacity.

The record is otherwise barren of any evidence that John Catt failed to comprehend the objects of his bounty, and the nature and extent of his property; that he did not understand that he was making a will; or that he did not dispose of his property according to some plan formulated in his mind. There is no testimony of incidents, facts or circumstances which would form a reasonable basis for an opinion that he was of unsound mind at the time of the execution of his will. His lack of loquacity with distant acquaintances can well be explained by his taciturn nature, his admitted old age and physical disability. The record before us presents no evidence that he did not know Nancy Peters at the time of her visit and we are aware of no decision in this State which holds that such testimony pre-

sents an issue of fact for a jury. In *Challiner* v. *Smith,* 396 Ill. 106, a relative, who had known testatrix all her life, testified that testatrix would ask her who she was; that she tried to get testatrix to talk but she was too weak; and that she was of the opinion that the testatrix was of unsound mind because she would not talk to her. At page 124 we stated: "\* \* \* and the opinion \* \* \* based upon the fact that Mrs. Couchman would not talk to her, should, upon proper motion, have been excluded."

*Milne* v. *McFadden,* 385 Ill. 11, and *Mitchell* v. *Van Scoyk,* 1 Ill.2d 160, are cited by plaintiffs as factually in point. We do not agree. In *Milne* three witnesses testified that the testator did not remember the names of persons who had exchanged labor with him; that he did not comprehend the condition of his crops and stared in a dazed manner at people he had known for years; that he was not able to recall all the property he owned, did not know the boundaries of his timber land, or the interests he had in Oklahoma; that he transacted no business in connection with his farm; and that he would get lost in the basement of his house and had to be assisted. At page 15, we stated: "Each of these witnesses testified to facts sufficient to form a basis for the expression of their opinion as to mental capacity." In *Mitchell,* five witnesses testified that in their opinion the testator was of unsound mind. All of them had known him over a long period of time. The testator had told one witness that he was no longer able, mentally or physically, to do business. His banker testified that at the time the conservatorship proceeding was started, the testator was not interested, failed to answer questions, and "was perfectly at sea;" and that he sat with his head down and when he looked up, became glassy-eyed and stared. From this brief summary of the testimony in the cited cases, it is apparent that they are not comparable to the case at bar, where the only factual basis for an opinion relative to testamentary capacity is the failure of the deceased on a given

day to talk to two witnesses. The trial court was correct in directing a verdict on the question of testamentary capacity.

The rules of law pertaining to the question of undue influence likewise have been heretofore outlined by this court. The undue influence which invalidates a will must be directly connected with the execution of the instrument and operate at the time it is made. It must be specifically directed toward procuring the will in favor of a particular party or parties and must be such as to prevent the testator from exercising his own will in the disposition of his estate. (*Butler* v. *O'Brien,* 8 Ill.2d 203; *Lake* v. *Seiffert,* 410 Ill. 444; *Brownlie* v. *Brownlie,* 357 Ill. 117.) But where a fiduciary relationship exists between the testator and a devisee who receives a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party, and the testator reposes trust and confidence in the devisee, and where the will is written, or its preparation procured by that beneficiary, proof of these facts establishes *prima facie* the charge that the execution of the will was the result of undue influence exercised by that beneficiary. (*Tidholm* v. *Tidholm,* 391 Ill. 19; *Weston* v. *Teufel,* 213 Ill. 291.) The old age and disability of the testator is also a material circumstance on the issue of undue influence. *Sulzberger* v. *Sulzberger,* 372 Ill. 240.

The complaint in the case at bar consists of one count wherein both lack of testamentary capacity and undue influence are charged. The allegations of undue influence are inept and inarticulately state the existence of a fiduciary relationship. However, the total allegations are sufficient to constitute the pleading of such relation and we will consider this aspect of the evidence. (Cf. *Belfield* v. *Coop,* 8 Ill.2d 293, 309.) The testator, paralyzed and bedridden, was over 80 years old. He relied on his brother James to enter his safe-deposit box, and to sign his checks. James also made all the appointments which the testator had with

his lawyer. The purported will was drawn according to instructions given to the lawyer by James in the absence of the testator. James and Frank Catt were present at the execution of the will, at which time James read part of it to the testator. The testator nodded his assent to the will and was physically assisted in making his mark upon it, which increased James Catt's share in the testator's estate from the one-quarter he would take by descent to one-third.

Viewing the evidence in its aspects most favorable to plaintiffs, we believe that it tended to establish: (1) that there was a confidential or fiduciary relationship between James Catt and the testator; (2) that James Catt, the devisee, was the dominant party and the testator the dependent party; and (3) that the will was procured by and in favor of the fiduciary through the use of his fiduciary or confidential relationship. Under these circumstances, the presumption of undue influence arises. (*Belfield* v. *Coop,* 8 Ill.2d 293, 309; *Redmond* v. *Steele,* 5 Ill.2d 602, 610.) Therefore, it was error for the trial court to direct a verdict on the issue of undue influence. In reaching such conclusion, we have not weighed the evidence, nor do we express any opinion as to its preponderance, even at the close of plaintiffs' case. We merely decide that it cannot be said that there is no proof of undue influence, and hold the evidence was sufficient to go to the jury. Cf. *Tidholm* v. *Tidholm,* 391 Ill. 19.

We therefore conclude that the case must be reversed and the cause remanded, with directions to deny the motion for a directed verdict on the issue of undue influence.

*Reversed and remanded, with directions.*