Edgar S. Keats and The Northern Trust Company, as Co-Executors of the Last Will of Max L. Keats, Deceased, and of the Last Will of Clara H. Keats, Deceased, Plaintiffs-Appellees, v. Sandra A. Cates and Title Insurance and Trust Company, a California Corporation, as Executor and Trustee Under the Last Will of Samuel D. Cates, Deceased, Defendants-Appellants, and Loren Kramer, Victoria Kramer, Dorothy L. Nelson and Ernest Nelson, Her Husband, Grace Schoenfeld, Rita Rodenbeck Adler, Edna Rodenbeck, Robert L. Keats and Ann Keats, His Wife, William A. Anderson, Deceased, Grace Hilliard, Harvey E. Hilliard, Sadie Langah, Melva Benjamin, D. C. Braham Benjamin, Charles A. Reif, Mary Reif, Raymond Carroll, Receiver, Defendants-Appellees.

Gen. No. 51,382.

First District, Third Division.

October 10, 1968.

179

Westbrook, Jacobson, and Brandvik, and Bentley, Campbell, Du Canto and Silvestri, of Chicago (Lowell H. Jacobson and Bert C. Bentley, of counsel), for appellants.

Clarence F. Martin, and Kelly and Cohler, of Chicago, for appellees.

ON REHEARING

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree which impressed a trust on the assets of Samuel D. Cates, deceased, in favor of the beneficiaries named in a reciprocal will executed by him in accordance with an agreement with his first wife. The defendants Sandra A. Cates deceased's second wife, and Title Insurance and Trust Company (a California corporation) as executor and trustee under decedent's last will, appeal. Their principal contentions are that the court did not have jurisdiction over them, that a necessary party was not joined, and that the agreement to execute reciprocal wills was unenforceable against the second wife by reason of public policy.

Samuel and Juel Cates were married in 1921 and lived together in Chicago until Juel's death in 1958. In 1944 they consulted Samuel's attorney who prepared a written agreement for reciprocal wills, to which copies of the proposed wills were attached as exhibits. The agreement and wills were executed on June 6, 1944. The agreement provided:

> "Each of the parties hereto covenants and agrees with the other party hereto not to revoke, annul, cancel, modify, amend or change his or her said Last Will and Testament either in whole or in part, without the consent in writing of the other party hereto."

The ultimate beneficiaries of their wills were Samuel's and Juel's relatives.

Thereafter Samuel and Juel executed supplemental agreements, and codicils to Samuel's will were executed by him pursuant to those agreements. The basic plan of distribution however remained unchanged. After Juel's death her will of June 6, 1944, made pursuant to the reciprocal agreement, was filed by Samuel in the Probate Court of Cook County. It was not offered in probate.

Samuel then moved to California, was introduced to Sandra in August 1959, and married her on February 7,

1960. Samuel and Sandra had discussed the execution of antenuptial property agreements and although one was prepared, it was never executed. Samuel did, however, execute a new will on June 2, 1960, which specifically revoked the will of June 6, 1944, and the codicils thereto. In his new will he devised $10,000 to Sandra and placed the balance of his estate in trust with the Title Insurance and Trust Company. Sandra was to receive the net income of the trust for life with liberal provisions for invasion of the corpus and the balance was to be distributed to Samuel's and Juel's relatives, although not in the same proportions as had been provided in the previous will made pursuant to the agreement with his deceased wife. Samuel died on January 18, 1961.

At the time of his death, Samuel's assets consisted of personal property having a situs in California and a parcel of commercial real estate in Chicago which had formerly been held in joint tenancy between him and Juel Cates. His will was admitted to probate in California and his personal estate administered there. The will was also admitted to probate in Cook County and an administrator with the will annexed appointed. This suit was filed shortly after Samuel's death by the beneficiaries named in the 1944 will.

Defendants Sandra Cates and the Title Insurance and Trust Company were served with summons in California and filed special appearances and motions to quash service of process. Those motions were supported by affidavits denying any connection with the State of Illinois which would make them amenable to process pursuant to the provisions of the "long-arm" statute, Ill Rev Stats, c 110, § 17 (1967). These motions were denied. Sandra then answered the complaint and proceeded to a hearing on the merits. The trust company did not answer and a default judgment was entered against it.

■ ■ When the jurisdiction of a court over the person of a defendant is challenged and the court determines

that it does have jurisdiction, the party affected may proceed to a hearing on the merits of the case and still preserve for review the contention that he is not amenable to process issued by a court of this state. Koplin v. Thomas, Haab & Botts, 73 Ill App2d 242, 219 NE2d 646. This is distinct from the situation in which a defendant couples a jurisdictional objection with an invitation to the court to exercise its jurisdiction, in which case the objection is contradictory to the conduct of the affected party and is deemed to be waived. Widicus v. Southwestern Co-op., 26 Ill App2d 102, 167 NE2d 799; O'Flaherty v. Osborn, 26 Ill App2d 152, 167 NE2d 563; Spencer v. American United Cab Ass'n, 59 Ill App2d 165, 208 NE2d 118. In the instant case both Sandra Cates and the trust company properly objected to the jurisdiction of the court and we are, therefore, free to consider the question on this appeal.

The affidavit filed by the trust company in support of its motion to quash service stated that it was not licensed or qualified to do business in Illinois and had no agent here; that it had not transacted business here; nor had it "any knowledge of any acts performed by it or arising out of such ownership, use or possession of real property in the State of Illinois, as it may have in its capacity as executor" which would give rise to any cause of action.

 There can be no question that Illinois courts have jurisdiction over Chicago real estate. As the state of the situs of the property, Illinois courts have jurisdiction not only to determine the ownership of Illinois real estate, but may also impose obligations upon persons in an action in personam arising from the ownership, use or possession of property within the state. Ill Rev Stats, c 110, § 17 (1967). The trust company, as trustee under Samuel's will, became the holder of the legal title to the premises by virtue of the admission of the will of Samuel Cates to probate in Cook County. Ill Rev Stats, c 3, § 53 (1967). Insofar as the beneficiaries under the 1944

will sought to assert an equitable interest in the premises owned by Samuel Cates at the time of his death and to remove the 1960 will as a cloud upon the title to the premises, the legal titleholder is a necessary party to the adjudication of the claim and subject to the jurisdiction of the Illinois courts.

 Appellants argue that the 1960 will directed the executor to effect the sale of the Illinois real estate; that this direction to sell worked an equitable conversion of the real estate into personal property and hence should be treated as having situs in California. With reference to the Illinois property the will stated:

> ". . . I direct my aforesaid Executor to exercise every effort to effect a sale of the same at a time, price and upon conditions most beneficial to my estate, it being my intention and desire that the same be either converted into cash or its equivalent or that the same be exchanged for property located in the State of California in order that the same may become a part of the residue of my estate and thus become a part of the trust hereinabove established. . . ."

It is apparent that this provision was not intended for the purpose of distribution but for the purpose of continued administration by the trustee. Nor was there a duty upon the executor to convert the premises into personal property. It had the option of exchanging it for real estate located in California. We hold that there was no equitable conversion of the real property into personal property.

 We proceed to consider the contention of appellants that the California executor could not be required to account for rents received by it during the course of its administration of the property. The "long-arm" statutes provides that a person, whether or not he is a citizen or resident of this state, submits to the juris-

185

diction of our courts by engaging in forms of conduct enumerated in the law. The specific provision here in question provides that an individual submits to jurisdiction as to any cause of action arising from the ownership, use or possession of real estate situated in Illinois. Ill Rev Stats, c 110, § 17(1) (c) (1967). After Samuel's death the Title Insurance and Trust Company, either as his executor or trustee, and Sandra Cates collected the rents from the Chicago real estate until a receiver was appointed by the trial court. To that extent Title Insurance and Trust Company submitted itself to the jurisdiction of the Illinois courts in an action for an accounting of the rents collected during that period.

Appellees maintain that the Illinois courts have jurisdiction to control the disposition of Samuel Cates' personal property which is presently being held by the Title Insurance and Trust Company as executor and trustee under his will. Such jurisdiction cannot arise from the ownership of real estate by Samuel or his trustee nor by the collection of rents by virtue of paragraph 3 of section 17. It must arise, if at all, from the execution of the 1944 contract and wills in this State. Appellees argue that this is a "transaction of business" here and is an action by which Samuel submitted his personal representative to the jurisdiction of our courts. It is their contention that this suit grows out of this business transaction and that Illinois courts may exercise jurisdiction over the California executor and trustee for the purpose of resolving questions arising from the contract. A state court may exercise personal jurisdiction over a nonresident if there is such "minimal contact" with the forum state as would satisfy the requirements of due process. International Shoe Co. v. State of Washington, 326 US 310 (1945). Although the application of the rule will vary to the extent and character of the defendant's activity, it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege

186

of conducting activities in the forum state, thus invoking the benefits and protection of its laws. Hanson v. Denckla, 357 US 235 (1957).

The Illinois legislature in the adoption of the "long-arm" statute set forth acts which constitute "minimal contact" with this state sufficient to justify the exercise by Illinois courts of personal jurisdiction over nonresident defendants. The constitutionality of this provision was sustained in Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673. The court held that section valid, not on the basis of implied consent to the jurisdiction of our courts, but on the basis of the legitimate interest of the state in providing redress in its courts against persons who, having substantial contacts with the state, incur obligations to those entitled to the state's protection. A similar statute was upheld by the United States Supreme Court in McGee v. International Life Ins. Co., 355 US 220 (1957).

When an individual submits to the jurisdiction of the Illinois courts by performing one of the acts enumerated in the statute and avails himself of the protection of our law, his personal representative may also be subject to the jurisdiction of our courts. Hayden v. Wheeler, 33 Ill2d 110, 210 NE2d 495. In Hayden the court held that the foreign administrator of a deceased nonresident who had been involved in an automobile accident in Illinois was a "personal representative" within the meaning of section 17 and was therefore amenable to the jurisdiction of the Illinois court under that section. The court, after stating the general rule to be that courts of one state cannot assert jurisdiction over a foreign administrator or executor, said (p 113) :

> "Whatever be the basis of the general rule, however, courts have almost unanimously held that the rule must give way to legislative enactments which extend judicial jurisdiction over foreign administrators in appropriate instances, such as when the ad-

187

ministrator's decedent has committed a tortious act in the forum State."

■■■ Appellees contend that the holding of Hayden v. Wheeler should be extended to provide personal jurisdiction over the executor of an estate of an individual who transacts business in Illinois by entering into a contract for the execution of reciprocal wills. The protection of life and property within its boundaries is a primary concern of state government and accordingly each state has a vital interest in *providing forum for actions arising from torts committed within its borders.* The vital interests of the state have expanded as our citizens have become more mobile and markets have become nationwide in scope, and the law has correspondingly evolved. No vital interests of the State of Illinois are here affected however. We note that some of the beneficiaries under the 1944 will have instituted action in California against these same defendants upon the same cause of action. Illinois has no greater interest in the disposition of the personal property of Samuel Cates than has the State of California. In the instant case we must adhere to the general proposition that one state cannot assert jurisdiction over a foreign executor when the jurisdiction is predicated simply upon the execution in that state of a contract to make a will. The disposition of personal property having its situs in California should be left to the California courts.

It is our conclusion, however, that the Illinois court did obtain jurisdiction over the person of Sandra Cates and over the Title Insurance and Trust Company for the purpose of determining the ownership of real estate located in Illinois and accounting for the rents therefrom. We proceed to consider the validity of the 1944 agreement and the rights of the beneficiaries of such contract under Illinois law.

■ A person may enter into a contract to dispose of his property by will if the contract is supported by any consideration such as mutual promises to execute wills conforming to the agreement, and such a contract becomes irrevocable when one party dies having executed a conforming will and not having received notice of revocation by the other party to the agreement. Frazier v. Patterson, 243 Ill 80, 90 NE 216, (which followed the early English case of Dufour v. Pereira, 1 Dick 419).

■ Contracts for reciprocal wills are still valid in Illinois and have been enforced in numerous cases. Curry v. Cotton, 356 Ill 538, 191 NE 307; Peck v. Drennan, 411 Ill 31, 103 NE2d 63; Platz v. Walk,˙ 3 Ill2d 313, 121 NE2d 483; In re Estate of Edwards, 3 Ill2d 116, 120 NE2d 10; In re Estate of Baughman, 20 Ill2d 593, 170 NE2d 557. A valid agreement of this type has also been held to be sufficient to govern the disposition of property held in joint tenancy by the parties if such appears to have been their intent. Helms v. Darmstatter, 34 Ill2d 295, 215 NE2d 245; Bonczkowski v. Kucharski, 13 Ill2d 443, 150 NE2d 144. Agreements with respect to reciprocal wills may be enforced through an action at law for breach of contract or by a suit in equity seeking a decree imposing a trust on the property involved. In re Estate of Baughman, 20 Ill2d 593, 170 NE2d 557. If the court finds there was a valid contract to dispose of property by will, a trust is fastened on the property in favor of the promisee. A trust so imposed will be enforced against the heirs and personal representatives of the deceased. Smith v. Smith, 340 Ill 34, 172 NE 32; Chambers v. Appel, 392 Ill 294, 64 NE2d 511.

Appellants cite Humane Society v. McMurtrie, 229 Ill 519, 82 NE 319, for the proposition that under pre-existing Illinois law the marriage of a testator revoked all prior wills. That is not the issue here. The question before us is whether the testator *violated a valid contract*

189

by so revoking the will. In the case cited the testator and his mother executed a joint and reciprocal will which was to be effective upon the death of both parties "if no individual will has been made." Several years thereafter and prior to the death of the mother, the testator married and he then executed an individual will. The joint will was no longer effective by the very terms of the agreement pursuant to which it was made and presumably the mother was aware of the revocation and could alter her estate plan as she saw fit. The case has no bearing on the issues here presented.

■■ Appellants also cite Buehrle v. Buehrle, 291 Ill 589, 126 NE 539, as authority for their contention that reciprocal wills or contracts for the execution of such wills are inoperative against the rights of the testator's widow. In that case the testator entered into an agreement with his brother, who was also his business partner, under the terms of which the brothers were to execute wills leaving their respective interests in the business to each other. The testator was married when the agreement was executed. That case therefore does not involve a spouse who married the testator following the execution of a reciprocal will. The court held that the husband could not by an agreement with his business partner deprive his widow of her rights in his estate and hence the widow was free to renounce the will and take her intestate share as provided by statute. The holding of the Buehrle case is consistent with the general rule that a contract to devise or bequeath property which is entered into by one who is married at the time he enters into such contract cannot defeat the rights of the surviving spouse of such promisor unless such surviving spouse has relinquished her rights in some other way. 1 Bowe-Parker; Page on Wills, § 10.24 (1960). In the instant case the first wife joined with the husband in the agreement for reciprocal wills. That agreement could not thereafter be rescinded unless notice of

190

a revocation was given during the joint lives of the parties. At the time the agreement was executed and at the time it became irrevocable Sandra was not married to the testator and accordingly she had no rights which could be compromised by a property agreement which antedated her marriage to the testator. The Buehrle case is clearly distinguishable and has no application here.

The evidence before the master in chancery showed that Samuel Cates and Juel Cates executed the contract for reciprocal wills after careful preparation, that they modified the agreement three times, always on the assumption that the initial agreement was binding, that only after Juel's death and in anticipation of his second marriage did Samuel attempt to avoid his obligations thereunder. The master found adequate consideration for the contract in the mutual promises of the parties and the giving up by Juel of her right to end the joint tenancy in the real and personal property of the parties. These findings are supported by the evidence. The court found that while lack of notice to or knowledge by Sandra of the existence of the reciprocal agreement could not in any manner affect its validity, there was evidence supporting the finding of the chancellor that Sandra did in fact have notice and was thereby afforded an opportunity to inquire into the nature of the agreement. That finding is based upon the testimony of W. Blair Gibbens, the attorney who represented Samuel prior to his death. Gibbens testified that Samuel and Sandra came to his office and discussed an antenuptial property agreement. In Sandra's presence Gibbens referred to the Illinois agreement and advised Samuel to check with his attorneys in Illinois and clarify his rights under the contract. There was ample basis therefore for the finding that Sandra was aware of the agreement prior to her marriage to Samuel.

Appellants argue that a contract to execute a will is unenforceable against a second wife by reason of the pub-

lic policy of providing for the financial security of widows. They also argue that the Illinois cases upholding such contracts are based on Dufour v. Pereira, supra, which has been modified by the House of Lords in the case of Dillon v. Public Trustee of New Zealand, 2 All England Reports 284 (1941), by the holding that joint and reciprocal wills are inoperative with respect to a second wife's statutory share.

A contract to make joint wills which may operate to deprive a second spouse of her statutory share is not contrary to the public policy of Illinois. Smith v. Smith, 340 Ill 34, 172 NE 32; Chambers v. Appel, 392 Ill 294, 64 NE2d 511. That position has also been adopted by the New York Court of Appeals in a case substantially like the case at bar, Rubenstein v. Mueller, 19 NY2d 228, 225 NE2d 540 (1967). The foregoing decisions have established that it is the public policy of the State of Illinois that the rights of beneficiaries under a valid contract to make a will are not subject to be defeated by the claims of a second spouse.

It is argued that the Illinois cases upholding such contracts are based on the English case of Dufour v. Pereira, supra, and that this has been modified by the House of Lords in the case of Dillon v. Public Trustees of New Zealand, 2 All England Reports 284 (1941), by the holding that joint and reciprocal wills are inoperative with respect to a second wife's statutory share. We find no indication however that the public policy of this state has changed nor do the decisions of our sister jurisdictions reveal such a trend.

Appellants further contend that the Illinois administrator with the will annexed was a necessary party defendant. Under the statutes applicable to decedents dying prior to July 1, 1966, an administrator with the will annexed was not a necessary party defendant to a proceeding in chancery to impress a trust on real estate

of the decedent. Estate of Kapraun, 21 Ill App2d 231, 157 NE2d 700.

 Lastly, it is contended that testimony violating the Dead Man's Act (Ill Rev Stats, c 51, § 2 (1965)) was admitted by the master over objection. That point is not preserved by objection or exception to the master's report and is not properly before us. Northern Trust Co. v. Sanford, 308 Ill 381, 139 NE 603.

 The evidence amply reveals the existence of a contract to execute reciprocal wills and the execution of such a contract by both parties. Under Illinois law that contract became irrevocable upon the death of Juel Cates. The court properly impressed a trust on the Illinois real estate of the deceased in favor of the beneficiaries under the agreement and properly ordered an accounting of the rents and profits thereof. It was without power, however, to enter an order with respect to the personal property in the estate of Samuel Cates.

The decree is affirmed in part and reversed in part and the cause is remanded with directions to the chancellor to revise the decree in accordance with the views herein expressed and for such other and further proceedings as are not inconsistent with such views.

Decree affirmed in part and reversed in part and cause remanded with directions.

DEMPSEY, P. J. and SULLIVAN, J., concur.