FLOYD HERSCHEL FREESE, Plaintiff-Appellee, *v.* CHARLES McCLURE FREESE *et al.*, Defendants-Appellants.

Fourth District   No. 13947

Opinion filed June 27, 1977.

James M. McLaughlin, of Sullivan, and Harrison J. McCown, of Tuscola, for appellants.

Owen, Roberts, Susler & Taylor, of Decatur, and Elder & Elder, of Sullivan, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This appeal grows out of litigation surrounding the disposition of the estate of George Freese, deceased. The plaintiff, Floyd Freese, is the brother of defendants Charles Freese and Vella Marie Bryant. Other named defendants are not involved in this appeal.

In 1957, George Freese and his wife, Katie, made mutual wills which contained, except as to gender, the following identical clause:

> "It is understood by me that a Will is being made on this same day and date by my beloved wife [husband], disposing of her [his] property and that it is understood by both of us that this Will and her [his] Will are to be considered as reciprocal and mutual as the plan we have mutually made for the disposition of all of the property owned by us and each of us and the division of same between our children."

It is apparent from a reading of both wills that George and Katie Freese desired an equal division of their property between their four children. The residual clauses provided for equal division. The home owned by Katie was devised to George, or, in the event of his prior demise, was to pass by the residual clause of her will. Forty acres owned by Katie was

devised to her daughter Vonna in fee simple. George's will provided that the 120 acres of farmland owned by him was to be divided into shares of 40 acres each and one share each was devised to Floyd, Charles and Vella for their lives with the remainder over to the heirs of their bodies.

Katie died in 1966 and the provisions of her will were carried out. She was followed in death by her daughter Vonna in 1968. It is unknown by this record what disposition was made of the 40-acre tract Vonna had inherited, but she died a childless spinster.

In 1972, George made a new will, giving 40-acre tracts each to Charles and Vella in fee simple. Floyd's legal life estate was changed to an equitable life estate and his 40-acre tract was devised to Charles in trust for Floyd. Spendthrift provisions were included in this trust. The provisions of the residuary legacy were not altered from the 1957 will. Before his death in 1974, George made a gift of the proceeds from the sale of the house he inherited from Katie to Charles and Vella. Further, he made cash gifts of $20,000 to Charles and his spouse and $20,000 to Vella and her husband. George also opened a joint bank account with Charles and Vella as joint tenants. This account contained $16,771.84 at George's death.

Following the death of his father, Floyd Freese sued his brother Charles and sister Vella for specific performance of the 1957 mutual wills of his parents and for an accounting by the defendants of the gifts their father made to them before his death. The complaint also sought the imposition of a trust over such funds for the joint and equal benefit of the three living children of George and Katie Freese. Plaintiff's theory is that George could not change the dispositive provisions of his will following Katie's death in 1966 and that the gifts made to Charles and Vella were a fraud on his rights under the 1957 wills.

The trial court found that George and Katie had entered into a contract to dispose of all the property owned by them, that the contract was to treat each child equally, that the contract became irrevocable on Katie's death, that George made testamentary transfers before his death in breach of that contract and that George's 1972 will altered Floyd's interest in the real estate. The court ordered specific performance of the contract, an accounting, and imposed a constructive trust on the monies received by Charles and Vella. The defendants appeal and we affirm.

■■■ A contract can be established from the terms of a will or wills, the circumstances of the testator, treatment of the testator's assets as a common pool or testimony as to what the testator's intention was. (*Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144.) The contract must be proved by clear and convincing evidence. (*Frese v. Meyer* (1945), 392 Ill. 59, 63 N.E.2d 768.) While mutual wills are generally not of themselves evidence of a contract (*Campbell v. Cowden* (1974), 18

Ill. App. 3d 500, 309 N.E.2d 601), the language of both 1957 wills here admits of no other conclusion but that the wills were irrevocable and therefore constituted a binding contract. (*Cf. In re Estate of Mueller* (1975), 26 Ill. App. 3d 163, 324 N.E.2d 674.) Even though Katie's will left certain property to George in fee, it is clear that the testators intended all of the property accumulated by them to pass to the children in equal shares. See *Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 215 N.E.2d 245.

■■ The question then becomes whether the change in Floyd's share from a legal to an equitable life estate and the transfers made by George to Charles and Vella constitute a breach of the contract arising in equity from the 1957 mutual wills. As to Floyd's inheritance of the farm property, it is clear that his interests were significantly and materially changed. Under the new will, Floyd has only an income interest for life under the trust. He no longer has control over how the land is to be used, his interest is subject to spendthrift provisions, cannot be assigned, and there is no possibility of merging his life estate with the remainder interest owned by his children to create a fee simple estate. We are of the opinion that he is not receiving that interest for which his mother contracted.

■■ It remains to consider the gifts George made of the proceeds from the sale of the home, the joint bank account and the outright cash gifts totaling $40,000 and the rights that Floyd may have therein. A contract embodied in a joint and mutual will or a mutual will becomes irrevocable as to the survivor upon the death of the first testator. (*Whiton v. Whiton* (1899), 179 Ill. 32, 53 N.E. 722.) Such an agreement may completely freeze the assets of the parties to the mutual will and prevent a subsequent transfer not contemplated or allowed by the agreement. (*Keats v. Cates* (1968), 100 Ill. App. 2d 177, 241 N.E.2d 645.) George, under this analysis, was prevented after Katie's death from making any testamentary transfer in derogation of the third-party beneficiary rights of any of the couple's four children.

■■ The question of whether the transfers made by George before his death were testamentary in nature is a question of fact for the trial court. The 1957 wills contemplated expenditures from the joint estate for the support of the survivor. The transfers here cannot be seen to be for this purpose. The evidence at trial included testimony of George's attorney that George contemplated the $20,000 gifts to Charles and Vella at the time his 1972 will was drawn and intended thereby to reduce the size of his estate for Federal estate tax purposes. The creation of a joint tenancy account can be viewed in the same light because of the form of ownership used to make the gift. While perhaps not in contemplation of death, the gift of the proceeds from the sale of the house received by George under Katie's will, were not used for George's support, and were reported as gifts for Federal gift tax purposes. We find that the trial court's ruling

holding that the above gifts were testamentary in nature was not against the manifest weight of the evidence.

Accordingly, we affirm the decree of the trial court in all respects.

Affirmed.

REARDON and HUNT, JJ., concur.