73 Ill. App.3d 643 (1979)
392 N.E.2d 612
In re ESTATE OF ANNA J. LETSCHE, Deceased.  (THEODORE E. LETSCHE, Petitioner-Appellant,
v.
ELEANORE L. GILLESPIE, Defendant-Appellee.)
No. 78-2135.
Illinois Appellate Court  First District (3rd Division).
Opinion filed June 27, 1979.
*644 Francis X. Cuisinier, of Chicago, for appellant.
Barnard and Barnard, of Chicago (Morton John Barnard and Michael J. Morrissey, of counsel), for appellee.
Judgment affirmed.
Mr. JUSTICE RIZZI delivered the opinion of the court:
Petitioner, Theodore E. Letsche, filed a petition to set aside the will of his mother, Anna Letsche, on the grounds of undue influence and lack of testamentary capacity. After petitioner presented evidence to the jury, the trial court directed a verdict in favor of the defendant, Eleanore Gillespie, the sister of the petitioner. The petitioner's motion for a new trial was denied and he appeals. We affirm.
In January, 1961, Anna J. Letsche, age 67, executed a will leaving her entire estate to Eleanore Gillespie and Theodore Letsche in equal shares. Shortly after the execution of the will, defendant successfully petitioned the probate court of Cook County to have Anna adjudicated incompetent and to have herself appointed as conservator of the estate.
In 1964, defendant placed Anna in Addolorata Villa, a home for the elderly. Defendant visited Anna regularly while she was in the home, except for a period of approximately one or two years during which *645 defendant and her husband resided in Florida. During her stay in Addolorata Villa, Anna performed various chores and acted as a tour guide for prospective residents.
It appears that sometime prior to July 5, 1976, Robert Pendergast, an attorney who represented the conservator estate since 1974, directed Anna to write out what she wanted in her will. Anna was to give this information to defendant; defendant was then to relay the information to Pendergast by telephone. According to defendant, Anna had not met Pendergast until "we wanted to draw a will."
Pursuant to Pendergast's request, Anna gave defendant a letter on July 5, 1976. The letter, handwritten by Anna and addressed to defendant, requested that she have the attorney draw up a new will for her. In general, she wanted one-third of her estate to go to petitioner and two-thirds of her estate to go to defendant. In addition, as in the 1961 will, she wished to appoint defendant as executrix. If defendant was not living at the time of Anna's death, she wanted the attorney for her estate, Mr. Pendergast, to serve as executor of her will. Defendant testified that she was not involved in the writing of the letter, nor was she present when it was written.
On August 13, 1976, Pendergast visited Anna at the Villa so that she could execute the will which he had drawn up for her. After executing the will, Anna handed it to defendant and asked her to place it in a safety deposit box, where it remained until Anna's death. Although defendant was on the premises at Anna's request on that day, she was not present in the room when the will was executed. Defendant also testified that she had nothing to do with the preparation of this will.
Two days after the execution of the will, another letter was written by Anna. The letter, which was also addressed to defendant, began with a request that the letter be read to petitioner after Anna's death. Anna then explained why she decided to leave less of her estate to petitioner. She stated that defendant had helped in her business and was still looking after her in her old age. Anna also emphasized that defendant was a teacher without a job or a husband to support her. In contrast, she felt that petitioner had neglected to help her during her lifetime. Additionally, Anna noted that petitioner was an engineer earning a good living.
Anna died on June 27, 1977. At the funeral services for decedent, petitioner learned of the changed will for the first time. The will was admitted to probate, and shortly thereafter, petitioner filed the petition to set aside the will.
Petitioner contends that the trial court erred in granting defendant's motion for a directed verdict. He claims that he established a prima facie case of undue influence, relying on the presumption arising from a *646 fiduciary relationship. In a will contest, a motion for a directed verdict is governed by the same standard as in other civil cases. (Beyers v. Billingsley, 54 Ill. App.3d 427, 432, 369 N.E.2d 1320, 1324 (1977).) The correctness of the trial court's ruling depends on whether all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill.2d 494, 510, 229 N.E.2d504, 513-14 (1967).
 1 For undue influence to invalidate a will, it must operate to prevent a testator from exercising his free will in the disposition of his estate. (Breault v. Feigenholtz, 54 Ill.2d 173, 181, 296 N.E.2d 3, 9 (1973); Peters v. Catt, 15 Ill.2d 255, 263, 154 N.E.2d 280, 285 (1958).) The undue influence must be specifically directed toward procuring the will in favor of a particular person or persons. Peters, 15 Ill.2d 255, 263, 154 N.E.2d 280, 285; Herbolsheimer v. Herbolsheimer, 46 Ill. App.3d 563, 566, 361 N.E.2d 134, 136 (1977).
 2 A presumption of undue influence arises when it is shown that: (1) a person in a fiduciary relationship with the testator receives a substantial benefit under the will; (2) the fiduciary is in a position of dominance over the testator; (3) the testator reposes trust and confidence in the fiduciary; and (4) the will is written by or its preparation is procured by the fiduciary. (Redmond v. Steele, 5 Ill.2d 602, 610, 126 N.E.2d 619, 624 (1955); Herbolsheimer, 46 Ill. App.3d 563, 566, 361 N.E.2d 134, 136.) Once these factors are proved, the petitioner has established a prima facie case of undue influence. (Beyers, 54 Ill. App.3d 427, 437, 369 N.E.2d 1320, 1327; Swenson v. Wintercorn, 92 Ill. App.2d 88, 99-100, 234 N.E.2d 91, 97 (1968).) It must be emphasized, though, that the mere existence of a fiduciary relationship is not sufficient to raise this presumption. (Herbolsheimer, 46 Ill. App.3d 563, 566, 361 N.E.2d 134, 136; Swenson, 92 Ill. App.2d 88, 100, 234 N.E.2d 91, 97.) The fiduciary must have actually participated in procuring the execution of the will. Anthony v. Anthony, 20 Ill.2d 584, 587, 170 N.E.2d 603-04 (1960); Greathouse v. Vosburgh, 19 Ill.2d 555, 572-73, 169 N.E.2d 97, 106 (1960).
 3 In the instant case, defendant, as conservator of decedent's estate, was in a fiduciary relationship with decedent. (See In re Estate of Ekiss, 40 Ill. App.2d 1, 6, 188 N.E.2d 348, 350 (1963); Nonnast v. Northern Trust Co., 374 Ill. 248, 261, 29 N.E.2d 251, 259 (1940).) However, an examination of the record discloses no evidence that defendant participated in procuring the will.
 4 Defendant testified that she had nothing to do with the preparation of the will. Moreover, she was not even present when the will was executed. At the lawyer's request, she merely read to him over the phone *647 Anna's plans for a revised will. Her activities, we believe, do not constitute such participation so as to raise a presumption of undue influence. Equally important, the testimony of the only other witnesses, the petitioner and the administrator of the Villa, also failed to reveal that defendant was involved in procuring the will. Clearly, there was no evidence here tending to establish the charge of undue influence. Therefore, we hold that the trial court properly directed a verdict in favor of defendant.
 5, 6 Petitioner also argues that the defendant, as conservator, had a duty to obtain approval of the probate court in order for Anna to execute a new will. No authority in support of this proposition has been cited to us, and we are unable to conclude that such a duty exists. Section 11-13 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 11-13) sets out the duties of the conservator which are to be performed under the direction of the court. Nowhere does the statute direct the conservator to obtain approval of a will executed by a ward. Furthermore, if the ward has the mental capacity required to execute a will, then he may dispose of his property by a will without involvement of the conservator or approval of the court. The fact that a conservator has been appointed is not conclusive on the issue of whether the ward possesses the requisite mental capacity. (Pendarvis v. Gibb, 328 Ill. 282, 292, 159 N.E.2d 353, 357 (1927).) Thus, the testatrix in the instant case had the right to execute a will on her own, and approval of the probate division of the circuit court was not necessary.
Accordingly, we hold that the trial court properly granted defendant's motion for a directed verdict and properly denied petitioner's motion for a new trial.
Affirmed.
SIMON, P.J., and McNAMARA, J., concur.