79 Ill. App.3d 997 (1979)
398 N.E.2d 1182
In re ESTATE OF LOUIS BASICH, Deceased.  (CONSUL GENERAL OF YUGOSLAVIA et al., Plaintiffs-Appellants,
v.
PALMINA THOMAS et al., Defendants-Appellees.)
No. 78-1330.
Illinois Appellate Court  First District (3rd Division).
Opinion filed December 31, 1979.
*998 Oliver H. Harris and Milton Laff, both of Evanston, for appellants.
Thomas J. Godfrey and David A. Beran, both of Oak Lawn, for appellees.
Reversed and remanded.
Mr. JUSTICE RIZZO delivered the opinion of the court:
This action was brought to contest the validity of the will of Louis Basich on the grounds of undue influence, lack of testamentary capacity and breach of a contract to make mutual wills. The complaint was filed by the Consul General of Yugoslavia as representative of seven beneficiaries of an earlier will of Louis Basich. The case was tried before a jury and at the conclusion of plaintiffs' case, the judge granted a directed verdict and entered judgment in favor of defendants on all three grounds. We reverse and remand.
In 1969, Kate Basich, wife of Louis Basich, contacted Mary Peresin, an attorney, to discuss the preparation of wills. When Peresin came to the Basich home, she realized they had not yet agreed on the beneficiaries, and so she left. Kate called Persin again at the end of 1971, but she left without drafting the wills because the Basich couple still disagreed about the beneficiaries. Peresin again went to the Basich home in March 1972, at which time an agreement was reached. The Basich couple decided that the survivor was to receive certain property and, upon the survivor's death, the remaining property was to be divided equally among three *999 nephews of Louis and four nieces and nephews of Kate. The Basich couple explained to Peresin that if one of them survived, they intended that the other could not change the will.
Peresin later prepared mutual wills in which each spouse left all property to the surviving spouse. In the event the other spouse did not survive, each will provided that the property was to be divided among the nieces and nephews Louis and Kate had named. Peresin translated the wills into Croatian before they were signed; the Basich couple had a limited knowledge of English. The mutual wills were executed on May 7, 1972.
In the spring of 1974, Louis was hospitalized and underwent surgery. Palmina Thomas, Louis' niece from Canada who was not named in the 1972 will, was in Chicago at this time. On April 7, 1974, Tony Mornar received a telephone call from Palmina asking him to come to the Basich home since Kate was not feeling well. Mornar was a friend of the Basich family and an officer of their bank; he helped them with their banking business and payment of their bills on a regular basis since Louis suffered a stroke in the mid-1960's. Mornar came to the Basich home and tried to convince Kate to go to a nursing home, but she refused.
On April 10, 1974, Mornar received another telephone call from Palmina. She had found the Basich's will and was very upset that she was not named in either will. Mornar explained that the wills expressed the Basich's wishes and then gave her the name of the attorney who drafted the wills. Later that day, Palmina called Peresin and asked her how she could have excluded Palmina and her brothers in the wills. On that same day, Mornar made arrangements for Kate to enter a nursing home.
On April 11, 1974, David Beran, an attorney, was called to the home of his cousin. At his cousin's house, he met Palmina; Palmina told Beran her uncle wished to speak to him regarding a will. Palmina and Beran then went to the hospital to see Louis. According to Beran, Louis asked him to draft a will.
Mornar went to the hospital to see Louis on April 12, 1974. He testified that Louis did not recognize him at first and then introduced him as his son. When Mornar told Louis that corns and bunions on Kate's feet were removed, he began to cry, thinking that his wife's feet had been cut off. On the next day, Mornar received a call from the nursing home informing him that Palmina wanted Kate to sign a document; he referred the call to Peresin.
At about this same time, Peresin received a call from Mornar, informing her that several people were at the hospital with Louis asking him to sign some papers. Peresin then called Kate to ask if she was aware of this situation. Kate replied that she did not know anything about it, and she hoped they would not prevail upon her husband to make any changes *1000 in his will or sign any papers. Kate asked Peresin to call Louis; Peresin called but was unable to speak to him. Instead, she asked the nurse to tell Louis his wife said not to sign any papers.
On April 23, 1974, Palmina went to the office of the public conservator and guardian of Cook County and signed a petition requesting that Louis be declared incompetent. The petition requested that she be appointed conservator of his person and that Margaret Terrell, the public guardian and conservator of Cook County, be appointed as conservator of his estate.
Palmina called Mornar on April 26, 1974, instructing him to disassociate himself from the Basich couple. On April 29, 1974, Palmina went to Beran's office to discuss the will; Louis was not present.
Kate Basich died on May 6, 1974. On May 9, 1974, Palmina was appointed conservator of the person of Louis Basich. Attached to the petition for conservator was an affidavit dated May 6, 1974, stating that Louis was physically and mentally incapable of managing his person and estate due to generalized arteriosclerotic vascular disease. In particular, it stated he had cerebral vascular myocardial problems manifested by mental confusion, incompetency and lack of comprehension. Seven days later, on May 16, 1974, Louis executed a new will, naming Palmina as sole beneficiary. He signed the will at home.
On the day after the execution of the will, Mornar visited Louis. Palmina was caring for Louis after his release from the hospital and was present at the time of his visit. Mornar testified that Louis acted "childlike and giddy" after Mornar tried to console him about the death of his wife. Louis said he wanted to go dancing when his health improved. He also commented that Palmina would not feed him if he did not listen to her. Mornar stated that Louis' actions at this time were contrary to his normal behavior.
A few days after the execution of the will, Thomas Hayden, who identified himself as Palmina's attorney, went to see Gordon Reinhard, an attorney who represented the public conservator and guardian's office. Because Reinhard expressed doubts regarding the execution of a will by Louis, Hayden suggested that an updated medical opinion be obtained. An updated medical opinion, dated May 20, 1974, was received by the public conservator and guardian's office. In the report, the doctor stated that Louis was very alert and oriented; he also said Louis improved physically as a result of surgery. The doctor also stated that Louis was capable of making decisions. No petition for restoration of competency, however, was filed. On May 27, 1974, Louis Basich died. The 1974 will was admitted to probate, and this will contest was subsequently filed.
 1 Plaintiffs contend that the trial court erred in granting directed verdicts in favor of defendants on all three counts of their complaint. In *1001 determining the propriety of the trial court's rulings, we must determine whether all of the evidence, when viewed in its aspect most favorable to the plaintiffs, so overwhelmingly favors the defendants that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504, 513, 514; In re Estate of Letsche (1979), 73 Ill. App.3d 643, 646, 392 N.E.2d 612, 614.
Count I alleges that the will was invalid because the testator lacked testamentary capacity. To have testamentary capacity, the testator must possess sufficient mental capacity to know the natural objects of his bounty, comprehend the kind and character of his property, understand the nature and effect of his act, and make disposition of his property according to some plan formed in his mind. Sloger v. Sloger (1962), 26 Ill.2d 366, 370, 186 N.E.2d 288, 290; Beyers v. Billingsley (1977), 54 Ill. App.3d 427, 437, 369 N.E.2d 1320, 1328.
 2, 3 At trial, plaintiffs introduced evidence that the testator had been declared incompetent and a conservator was appointed for him; the affidavit attached to the petition for conservator stated that he was mentally incapable of managing his person or estate. Although the appointment of a conservator is not conclusive on the question of whether a person possesses sufficient mental capacity to execute a will, it may be considered as evidence on that issue. (Pendarvis v. Gibb (1927), 328 Ill. 282, 292, 159 N.E. 353, 357.) The testimony of a lay witness relating to the mental condition of a testator at a reasonable time before and after the execution of a will is also competent and may be considered if it tends to show the testator's mental condition at the time he made the will. (See Mitchell v. Van Scoyk (1953), 1 Ill.2d 160, 176, 115 N.E.2d 226, 235; Trojcak v. Hafliger (1972), 7 Ill. App.3d 495, 499, 288 N.E.2d 82, 85.) Here, Tony Mornar, who knew Louis Basich for many years and had regular contact with him, testified regarding two occasions which may have indicated his lack of testamentary capacity. The first incident occurred when Louis was in the hospital approximately one month prior to the execution of the will. At that time, Louis failed to recognize Mornar and introduced him as his son even though Louis did not have a son. Also, Louis started crying when he thought his wife's feet had been cut off, even though he was only told that some corns and bunions were removed. The second incident took place in the Basich home the day after the will was executed. Mornar testified that Louis was acting childlike and giddy and wanted to go dancing; he also said that this behavior was not normal for Louis.
 4 Under the circumstances, the evidence does not so overwhelmingly favor defendants that no contrary verdict could ever stand on this issue. There was sufficient evidence from which the jury could conclude that the testamentary capacity of the testator was impaired. Therefore, the issue *1002 of whether the testator had the requisite mental capacity to make a will was for the jury to determine. (Downey v. Lawley (1941), 377 Ill. 298, 301, 36 N.E.2d 344, 346.) A directed verdict should not have been granted on count I.
Count II alleges that the will is invalid on the basis of undue influence. Undue influence which will invalidate a will must be specifically directed toward procuring the will in favor of a particular person or persons. (Peters v. Catt (1958), 15 Ill.2d 255, 263, 154 N.E.2d 280, 285; In re Estate of Letsche (1979), 73 Ill. App.3d 643, 646, 392 N.E.2d 612, 614.) It must operate to destroy the testator's freedom concerning the disposition of his estate. Breault v. Feigenholtz (1973), 54 Ill.2d 173, 181, 296 N.E.2d 3, 9; In re Estate of Ariola (1979), 69 Ill. App.3d 158, 168, 386 N.E.2d 862, 869.
 5 Under certain circumstances, a presumption of undue influence exists. This presumption arises when the following facts are shown: (1) there is a fiduciary relationship between the testator and a person who receives a substantial benefit under the will; (2) the fiduciary is in a position of dominance over the testator; (3) the testator reposes trust and confidence in the fiduciary; and (4) the will is written or its preparation procurred by the fiduciary. (Letsche, 763 Ill. App.3d 643, 646, 392 N.E.2d 612, 614; Herbolsheimer v. Herbolsheimer (1977), 46 Ill. App.3d 563, 565, 566, 361 N.E.2d 134, 136.) Proof of these facts establishes a prima facie case of undue influence. Beyers v. Billingsley (1977), 54 Ill. App.3d 427, 437, 369 N.E.2d 1320, 1327; Swenson v. Wintercorn (1968), 92 Ill. App.2d 88, 99, 100, 234 N.E.2d 91, 97.
 6, 7 In the present case, defendants contend that plaintiffs have failed to prove the fourth fact necessary to raise the presumption of undue influence. As conservator, Palmina was in a fiduciary relationship with Louis. (See Letsche, 73 Ill. App.3d 643, 646, 392 N.E.2d 612, 614; In re Estate of Ekiss (1963), 40 Ill. App.2d 1, 6, 188 N.E.2d 348, 350.) Defendants argue, however, that plaintiffs have not introduced any evidence to show that Palmina participated in the preparation of the will. We disagree.
The day after she discovered that she was not named as a beneficiary in either will, Palmina was instrumental in obtaining the services of a new attorney so that her uncle could execute a different will. The initial discussion took place between the attorney, David Beran, and Palmina; Louis was not present. Palmina then accompanied the attorney to the hospital to see her uncle. At a later date, Palmina again discussed the will with Beran in Louis' absence. The execution of the 1974 will, in which Palmina was named sole beneficiary, took place in the Basich home while Palmina was caring for Louis after his wife's death. We believe the evidence presented, when viewed in a light most favorable to plaintiffs, *1003 does not so overwhelmingly favor defendants that no contrary verdict could ever stand on the issue of whether she participated in the preparation of the will and whether undue influence existed. Thus, a directed verdict on count II was improperly entered.
 8 Finally, count III alleges that the Basich couple entered into a verbal agreement not to revoke the mutual wills executed in 1972. A party may enter into a contract to dispose of his property in a certain way as long as the contract is supported by sufficient consideration; mutual promises to execute wills which conform to the agreement are sufficient consideration to support such an agreement. (Keats v. Cates (1968), 100 Ill. App.2d 177, 189, 241 N.E.2d 645, 651.) This agreement becomes irrevocable as to the survivor on the death of the first testator. Freese v. Freese (1977), 49 Ill. App.3d 1041, 1044, 364 N.E.2d 983, 985; Keats, 100 Ill. App.2d 177, 189, 241 N.E.2d 645, 651.
 9 Defendants argue that there was not sufficient evidence to show an agreement to make mutual wills. We disagree. Although mutual wills are not generally in themselves evidence of a contract, such a contract can be proved by considering the terms of the wills themselves, relevant facts and circumstances, treatment of the testator's assets as a common pool and testimony as to the intentions of the testators. Freese, 49 Ill. App.3d 1041, 1043-44, 364 N.E.2d 983, 985.
Mary Peresin, the attorney who drafted the wills, testified as to the intentions of the testators. After much disagreement as to the beneficiaries, the Basich couple contacted Peresin for the third time to draw up their respective wills. They told Peresin that they intended that if one of them survived, the other would not change his will. Under the circumstances, the evidence does not so overwhelmingly favor defendants on this issue that no contrary verdict could ever stand, and therefore, a directed verdict should not have been entered on count Ill.
Accordingly, judgment in favor of defendants on counts I, II and III is reversed, and the case is remanded to the trial court for further proceedings.
Reversed and remanded.
McNAMARA and McGILLICUDDY, JJ., concur.