*In re* ESTATE OF VERN V. WALLS, Deceased (Albert Walls *et al.*, Plaintiffs-Appellants, v. Cyril DeClercq, Indiv. and as Ex'r of the purported Will of Vern V. Walls, *et al.*, Defendants-Appellees).

Fourth District   No. 4—90—0192

Opinion filed September 25, 1990.

Barber, Segatto, Hoffee & Hines, of Springfield (Carl O. Hoffee and R. Kurt Wilke, of counsel), for appellants.

Edward Booth, of Booth, Pasek & Gollings, of Decatur, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs, the heirs at law of Vern V. Walls (Walls heirs), filed a will contest action alleging (1) the last will and testament of Vern V. Walls (decedent) was the result of undue influence by Cyril DeClercq (Cyril) and Floyd DeClercq (Floyd), brother and nephew, respectively, of decedent's predeceased wife, Kathryn; and (2) decedent lacked testamentary capacity. The jury returned a verdict for the Walls heirs on the grounds of undue influence. The trial court entered a judgment notwithstanding the verdict (*n.o.v.*) for the defendants, the DeClercq heirs. On appeal, the Walls heirs argue the trial court erred in entering judgment for the defendants where the evidence established undue influence. The plaintiffs raise no issue regarding decedent's testamentary capacity. We affirm.

Decedent died on March 31, 1986, at the age of 79. Decedent's wife, Kathryn, died two months earlier after a long illness. Decedent and Kathryn had one child, who predeceased them at age 14. Decedent was survived by several brothers and sisters. Cyril is Kathryn's brother; Louella Drone (Louella) is Kathryn's sister.

Prior to Kathryn's death, decedent's and Kathryn's 1985 wills provided that on the death of the survivor, their estate would be divided equally between the Walls heirs and the DeClercq heirs. Cyril was appointed executor; Cyril's son, Maurice, was appointed alternate executor. On March 15, 1986, decedent, then in the hospital for emphysema, executed a new will which directed the bulk of decedent's estate, valued at $275,000 to $300,000, to the DeClercq heirs. Only $34,000 in cash bequests were given to the Walls heirs.

Harold Tenney, the lawyer who prepared the 1985 wills for Kathryn and decedent, testified for plaintiffs that the 1985 wills of decedent and Kathryn split their total estate equally between the Walls heirs and the DeClercq heirs on the death of the survivor of them. Tenney stated the Walls wanted their 1985 wills to be substantially the same as their prior wills executed in 1975 when they were living in Arkansas. Of the one-half devised to the DeClercq heirs, Cyril and his family were to receive one-half and Louella was to receive one-half. Cyril was again appointed executor, and Maurice was appointed alternate executor.

On cross-examination, Tenney testified that after the wills were executed, he represented the decedent in connection with a roof problem at decedent's house. Tenney terminated his representation of decedent because a problem developed with decedent. Tenney never met Cyril and had no reason to believe anyone other than decedent was the cause of the problem that resulted in the termination of his repre-

sentation. Tenney stated the last day he did any work for decedent was February 17, 1986.

Louella testified as an adverse witness for plaintiffs. She stated that decedent was close to her children. Louella moved in with decedent and Kathryn after they moved to Decatur to help care for Kathryn during her illness. After Kathryn got sick, Louella stated the decedent hired someone to handle his financial affairs because Kathryn had done it previously. On October 1, 1985, the day decedent and Kathryn executed their wills, decedent and Kathryn explained to Louella and Cyril that each would receive 25% of their combined estates. Kathryn and decedent kept their new wills in a chest of drawers in their bedroom. Louella remained close to decedent after Kathryn died but did not continue to live in his house. Louella stated when she called decedent, often Cyril was at decedent's house. Louella recalled decedent's brother, Al Walls, came to visit with decedent after Kathryn's death. According to Louella, decedent and his brother did not have a "falling out." Louella stated decedent's personality changed totally after Kathryn's death. Decedent would often sit at a table for long hours at a time. After decedent went into the hospital, he told Louella that Cyril came to visit him every night. Louella stated Cyril called her after she received a summons in this action and told her not to worry about getting a lawyer, that he would handle everything. Louella testified Cyril came to visit her at her apartment on July 11, 1988, for the first time in four years and told her not to say anything about decedent because "all would be lost."

Cyril testified as an adverse witness for plaintiffs. Cyril stated Kathryn and decedent told him he would be appointed executor of their wills. Cyril stated Kathryn and decedent did not explain the contents of their 1985 wills to him and Louella but merely told them new wills were executed on October 1, 1985. Cyril testified Donald Baird was his attorney in 1985 and had been for 35 to 40 years. Cyril learned from decedent on February 28, 1986, that decedent had fired his lawyer, Tenney.

Cyril stated he knew decedent was then thinking about executing a power of attorney. Cyril identified a note he prepared, addressed to Baird, which was admitted into evidence. The note read: "Please furnish a legal PDQ [as] mentioned in our conversation." The note was dated February 24, 1986, four days before decedent fired his prior attorney, and had Cyril's name in the lower right-hand corner. Cyril stated "PDQ" meant "pretty darn quick." Cyril stated he gave the note to the decedent to assist decedent when he went to visit Baird.

Baird prepared a power of attorney for decedent naming Cyril as decedent's agent on March 6, 1986. Cyril admitted taking decedent to Baird's office for decedent's first visit with Baird for probating Kathryn's will but he could not recall the date of the visit. Cyril stated the power of attorney allowed him to handle all decedent's financial affairs. Cyril stated decedent delivered Kathryn's will to Baird's office before he went into the hospital on March 9, 1986.

Cyril recalled a statement decedent made to him prior to entering the hospital, to wit: "Cyril, I don't think you're going to like my Will." Cyril also recalled, after being presented with his prior deposition testimony, that decedent made the following statement to him in the hospital: "Cyril, I don't think we treated you right in this Will." Cyril also stated he found out decedent had made out another will after it was executed.

On direct examination, Cyril stated he did have a conversation with his sister, Louella, on July 11, 1988, in her apartment at which time he advised her not to discuss the will contest case. Cyril admitted that his contrary answers to an interrogatory on the same subject and to an interrogatory regarding whether he had visited his sister in the past five years were erroneous. Cyril also stated he helped the decedent with his roof problem by going to the school district from which decedent had purchased the house.

On examination by his counsel, Cyril denied suggesting to decedent how to divide his estate and did not hear anyone suggest such a thing to decedent.

Gene Pride testified for defendants. Pride shared a room with decedent in Decatur Memorial Hospital from March 12 to March 15, 1986. Pride discussed decedent's will and estate planning with him. Decedent told Pride he was going to make some changes in his will and he was displeased with portions of his family that he had not seen for a while.

David Baumberger, decedent's physician during his March 1986 hospitalization, testified for defendants that most of the time decedent was in the hospital he was alone. Baumberger never met any of the DeClercqs. On March 15, 1986, Baumberger was asked by decedent to call his attorney because he (decedent) wanted to talk with him about his will. Baumberger called attorney Baird. Baumberger did not know why decedent wanted to talk with his attorney.

Donald G. Baird testified his office received a call from decedent on February 26, 1986. The written message Baird received indicated decedent was Cyril's brother-in-law. Baird stated decedent's reason for contacting his office was to ask Baird to handle the probate of

Kathryn's estate. Baird also prepared a power of attorney for decedent to Cyril. Baird stated he received a call from Dr. Baumberger on March 15, 1986. Baumberger told Baird decedent wanted to see him about making a new will. Baird went to see decedent on March 15. Decedent told Baird he was quite ill, probably terminal, and he wanted to execute a new will. Baird prepared a new will that same day at decedent's direction. Baird returned to the hospital with the new will. Decedent then executed the will after initialing one change in a bequest to Louella. Baird stated decedent was of sound mind and memory when he executed the new will. Baird stated no one else was present when the new will was signed except his partner and a patient in the adjoining bed.

On cross-examination, Baird stated he had known Cyril for about 30 years and had represented Cyril occasionally in the past. Baird stated he prepared wills for Cyril and his wife and represented Cyril as executor of both Kathryn's and decedent's estates. Baird stated he met personally with decedent in his office shortly after the February 26, 1986, telephone call and Cyril accompanied decedent. Baird stated Kathryn's will was brought to him in his office on March 12 or March 13, 1986. Baird did not specifically recall who delivered the will to his office but stated Cyril could have delivered it. Baird stated the power of attorney to Cyril was executed on March 5, 1986, and it gave Cyril broad power to act for decedent in all matters except the conveyance of real estate. Baird stated Cyril was in a position of trust to decedent by virtue of the power of attorney. Baird admitted the March 1986 will was substantially different from the October 1985 will because in the later will Cyril's family received over one-half of decedent's estate. The 1985 will provided for an equal division between the Walls heirs and the DeClercq heirs. Decedent never told Baird he had any falling out with any family member.

Hugh Rowden, Baird's law partner, testified he assisted in the preparation and attended the execution of decedent's will on March 15, 1986. Rowden did not see anyone in the area of decedent's hospital room on March 15 and stated decedent was alert and appeared to freely and voluntarily execute his will. Decedent did not mention that he had any falling out with any family member. Rowden did not learn what decedent's motivation was for making a new will.

The jury returned a verdict for plaintiffs. Defendants filed a posttrial motion, alleging the verdict must be set aside because the evidence did not sustain a finding of undue influence as a matter of law. The trial court granted defendant's motion for judgment *n.o.v.*, finding Cyril and the other defendants did not participate directly in the

procuring of decedent's will and the evidence was legally insufficient to support the jury's verdict.

The plaintiffs argue the evidence established the necessary elements of undue influence. That is, (1) Cyril held a position of trust with decedent to such an extent that Cyril could have exerted undue influence; (2) Cyril caused the preparation of the 1986 will; and (3) Cyril received substantial benefit under the 1986 will. Plaintiffs further contend the fact that Cyril's testimony at trial differed from his prior deposition testimony is substantive evidence of undue influence which the jury obviously considered compelling.

Defendants argue plaintiffs' evidence did not establish that Cyril directly procured the execution of the 1986 will and, therefore, defendants were entitled to judgment *n.o.v.* Defendants maintain any prior inconsistent statements Cyril made were introduced for impeachment purposes and did not constitute substantive evidence of undue influence.

■ A court should enter judgment *n.o.v.* only when all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence would ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Accordingly, our review of the evidence will be in the light most favorable to the Walls heirs.

■ The undue influence necessary to set aside a will must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another. (*Breault v. Feigenholtz* (1973), 54 Ill. 2d 173, 296 N.E.2d 3.) The undue influence must be specifically directed toward procuring the will in favor of a particular person or persons. (*Peters v. Catt* (1958), 15 Ill. 2d 255, 263, 154 N.E.2d 280, 285.) A presumption of undue influence arises when it is shown that: (1) a person in a fiduciary relationship with a testator receives a substantial benefit under the will; (2) the fiduciary is in a position of dominance over the testator; (3) the testator reposes trust and confidence in the fiduciary; and (4) the will is written by or its preparation is procured by the fiduciary. (*In re Estate of Letsche* (1979), 73 Ill. App. 3d 643, 646, 392 N.E.2d 612, 614, citing *Redmond v. Steele* (1955), 5 Ill. 2d 602, 610, 126 N.E.2d 619, 624.) More than the mere existence of a fiduciary relationship must be shown to raise the presumption. (*Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 566, 361 N.E.2d 134, 136.) The fiduciary must have actually participated in procuring the execution of the will. (*Anthony v. Anthony* (1960), 20 Ill. 2d 584, 587, 170 N.E.2d 603, 604.) Once a presumption of undue influence is shown, the burden is on the

proponents of the will to produce evidence that the will was the free and voluntary act of the testator. *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 115 N.E.2d 226.

Plaintiffs' evidence established that Cyril held a position of trust with the decedent as attorney in fact by virtue of a power of attorney. The existence of the power of attorney evidenced further that decedent had enough trust and confidence in Cyril to allow him to handle all of his daily financial affairs. The evidence did show that Cyril and his family received an increased benefit under the 1986 will. However, there is no evidence that Cyril procured the preparation of the will. While Cyril accompanied decedent to Baird's office on one occasion, the purpose of that visit was for decedent to request Baird to assist in the probate of Kathryn's will. No discussion of decedent's will took place at that visit. Further, the evidence showed decedent was alone in his hospital room (1) when he requested to speak with his attorney on March 15; (2) later when Baird first discussed the details of the new will for decedent on March 15; and (3) again when Baird returned to decedent's hospital room on March 15 for the execution of the will. There is no evidence Cyril ever discussed with the decedent what the terms of his will should be and no evidence Cyril secured witnesses for decedent by prearrangement. On the contrary, the evidence presented, without more, showed the decedent initiated the idea of changing his will for reasons that may never be known.

As to plaintiffs' argument that Cyril's conflicting statements regarding his visit and conversation with his sister, Louella, in July 1988 constitute substantive evidence of undue influence, we disagree. Plaintiffs provide no case which supports their position. Further, while the fact that Cyril gave conflicting testimony reflects on his credibility, it does not constitute evidence of procurement of the will, which plaintiffs wholly failed to prove. Accordingly, we find no error in the trial court's order entering judgment *n.o.v.* for the defendants.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

SPITZ and STEIGMANN, JJ., concur.